UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CRAIG MEDOFF, )<br>)<br>Defendant ) | Criminal No. 24-10048-MLW |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant spent years flagrantly violating this Court's 2016 Order ("the 2016 Order")[1] that prohibited the defendant from participating in the offer or sale of securities. Despite agreeing to the 2016 Order, the defendant quickly moved to create a fake identity ("Alexander Carlin") and build a company ("Nova Capital") so that he could make money through the offer and sale of securities. In total, through his misconduct, the defendant received more than $1.6 million in payments from clients. And when the defendant was caught, after agreeing to plead guilty, he violated his conditions of release and made false statements to the Court and U.S. Probation.

For his conduct, the government asks the Court to sentence the defendant to a period of incarceration at the high end of the guideline sentencing range ("GSR"), a period of supervised release of three years, and the mandatory $100 special assessment. The government is not seeking a fine in light of the defendant's apparent inability to pay the fine in combination with the outstanding and anticipated monetary penalties stemming from the parallel civil litigation.

---

[1] Dkt. No. 204, *Securities and Exchange Commission v. Biochemics, Inc. et al.*, Civ. No. 12-12324.

I.      *Calculation of the Sentencing Guidelines*

U.S. Probation calculated the defendant's criminal history category as II and the defendant's offense level as eight. PSR ¶¶ 28–37 (calculating a base level offense of six, adding four because the offense involved the violation of the 2016 Order, and subtracting two for acceptance of responsibility). The government does not object to this calculation.[2] The resulting GSR is four to ten months of incarceration, two to five years of supervised releasee, a special assessment of $100, and a fine of $2,000 to $20,000. *Id.* at 33.

II.      *Sentencing Recommendation*

For the reasons set forth below, the government recommends a period of incarceration at the high end of the GSR, 36 months of supervised release, the mandatory $100 special assessment, and no fine.

         a. *The Seriousness of the Offense and General Deterrence*

A period of incarceration at the high end of the GSR followed by a lengthy period of supervised release would reflect the seriousness of the offense and the need to deter others from similar conduct. The Court is regularly tasked with entering consent judgments—as it did against the defendant in this case—in the context of civil enforcement proceedings. An important aspect of those judgments is the Court's continued supervisory authority over the defendant with respect to violations of the Court's orders. As reflected in the PSR, the defendant spent years working with multiple clients in the securities industry and repeatedly violating the 2016 Order. A substantial punishment is necessary to reflect the seriousness of this conduct and to deter others who may consider simply ignoring the Court's orders as the defendant did in this case. *See, e.g.*,

---

[2] The parties previously calculated the same offense level and GSR in their most-recent proposed plea agreement. Dkt. No. 73-1.

*United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012) ("We have previously emphasized the importance of general deterrence in white-collar crime."); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'") (quoting Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker,* 47 Wm. & Mary L. Rev. 721, 724 (2005)).

b. *Specific Deterrence*

The defendant demonstrated a prolonged willingness over the course multiple years to violate the 2016 Order for the sake of personal gain. The defendant's conduct took extensive planning and effort, for example, the creation and marketing of Nova Capital, the creation of the fake identity Alexander Carlin, and the offer and sale of securities for multiple clients.[3] This conduct, as well as the various securities offerings facilitated by the defendant, are described in the PSR.

The defendant's defiance of court orders did not begin with the 2016 Order. The Court previously summarized the defendant's lengthy history of violating court orders. Dkt. No. 786, *Securities and Exchange Commission v. Biochemics, Inc. et al.*, Civ. No. 12-12324. This began with a securities fraud case in 1993 that resulted in the defendant being ordered to pay $95,000

---

[3] The 2016 Order also required the defendant to pay disgorgement and a civil penalty to the Securities and Exchange Commission, totaling $114,370.20, which the defendant did not pay. PSR ¶ 22 ("In November 2023, MEDOFF paid $10,000 toward the disgorgement and civil fine required by the 2016 final judgment. MEDOFF had not previously paid any money toward the Court-ordered disgorgement or civil fine, and the outstanding balance remains $110,103.33."); *see also* 2016 Order ¶ VI, Dkt. No. 204, *Securities and Exchange Commission v. Biochemics, Inc. et al.*, Civ. No. 12-12324 ("defendant is liable for disgorgement of $11,531.25 . . . together with prejudgment interest thereon in the amount of $2,838.95, for a total of $14,370.20, and a civil penalty in the amount of $100,000 . . . defendant shall satisfy this obligation by paying $114,370.20 to the SEC within 14 days after entry of this final judgment."),

3

and being barred for life from acting as or associating with a broker or dealer in securities. *Id.* at 1. The defendant never paid the fine and proceeded to participate in other fraud schemes involving the offer and sale of securities. *Id.* at 1-2. For example, the defendant pled guilty to conspiracy to commit securities fraud in 1995, resulting in a probationary sentence and a fine that the defendant never paid. *Id.* The defendant was then incarcerated from 2011 to 2014 for violating his conditions of probation, during which time he faced new allegations of securities fraud relating to the offer and sale of securities in Biochemics, Inc. *Id.* The resulting civil case eventually led to the 2016 Order that is the subject of this criminal proceeding.

Moreover, the defendant's defiance of court orders did not end with his many violations of the 2016 Order. As the Court observed through extensive factfinding, the defendant has violated his conditions of release by possessing cocaine after he was released on February 28, 2024. Dkt. No. 162. During a hearing on April 29, 2024, the defendant also lied to the Court by claiming he had not been using drugs[4] and then, during a Court-ordered recess, failed a drug test.[5] After that failed drug test, the Court explicitly added a condition of release requiring the defendant "not use or unlawfully possess a narcotic drug or other controlled substance" and "submit to testing for a prohibited substance if required." Dkt. No. 71. The defendant then repeatedly violated that condition of release by using drugs, which is reflected in multiple failed drug tests, *see, e.g.*, Dkt. No. 123-4, while simultaneously disclaiming any such drug use to U.S. Probation.

---

[4] Hr'g Tr. 34:12-16, Dkt. No. 89-1 ("THE DEFENDANT: . . . But I want to say that your presumption that I was actually using drugs that doesn't reflect my drug of choice is just totally inaccurate. THE COURT: Okay. Well, we'll see.").

[5] *Id.* 35:7-13 ("THE COURT: Counsel and Mr. Medoff are here with the probation officers. . . . I've been informed that Probation conducted a drug test with an instant cup urinalysis, it came back positive for marijuana, Mr. Medoff admitted the use of edibles. It also came back positive for cocaine, and that sample is going to be sent for further testing.").

The defendant's conduct reflects a complete disregard for the Court's authority to enforce the law. The Court's sentence must therefore be sufficient to specifically deter the defendant from further violations. Given the defendant's track record of repeated violations, a sentence at the high end of the GSR is warranted. *See, e.g., United States v. Centariczki*, 98 F.4th 381, 385 (1st Cir. 2024) (upholding an above-guidelines sentence based, in part, on "the appellant's repeated violations of his supervised release terms and the multiple second chances afforded to him by the court and probation officer" combined with the district court's explanation that the sentence would "hopefully deter [him] from a lifetime of . . . repeat[ing] the same harmful conduct").

    c. *Government's Change in Position from the Proposed Plea Agreement*

On April 29, 2024, the government was willing to enter into a plea agreement in which the government agreed to recommend a period of incarceration at the low end of the GSR. *Id.* ¶ 5 ("The U.S. Attorney agrees to recommend incarceration for 4 months."). This recommendation was in the context of a plea agreement and aligned with the median sentence for what the government understood to be similarly situated defendants. *See* PSR ¶ 115 ("During the last five fiscal years (FY2019-2023), there were 112 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 8 and a Criminal History Category of II, after excluding defendants who received a §5K1.1 substantial assistance departure. . . . For all 112 defendants . . . the average sentence imposed was 3 month(s) and the median sentence imposed was 4 month(s).").

The government now recommends a sentence that includes a longer period of incarceration based on the defendant's conduct that came to light after the government submitted the plea agreement for the Court's consideration. Most notably, as detailed above, the government became aware of the defendant's additional violations of the Court's orders beyond the violations addressed in the plea agreement as well as the defendant's lies to the Court and U.S. Probation that

5

were made to conceal those additional violations. Under those circumstances, the government has changed its recommendation from a period of incarceration at the low end of the GSR to a period of incarceration at the high end of the GSR.

### d. Absence of a Fine

The defendant still owes $110,103.33 to the Securities and Exchange Commission for disgorgement and the civil penalty imposed by the 2016 Order. PSR ¶ 22. The government also anticipates that the defendant, in addition to paying the disgorgement and civil penalty from the 2016 Order, will also be ordered to disgorge the more than $1.6 million that he obtained through his violations of the 2016 Order. PSR ¶ 17. While neither restitution nor forfeiture are available as remedies in this criminal proceeding, the Court can address the payment of the outstanding civil penalty and disgorgement of the defendant's ill-gotten gains in the defendant's pending civil case. *Securities and Exchange Commission v. Biochemics, Inc. et al.*, Civ. No. 12-12324. As for the imposition of a fine, which is available at sentencing in this case,[6] the government does not recommend a fine based on the defendant's likely inability to pay. U.S.S.G. § 5E1.2(a). Based on the government's understanding of the defendant's financial records,[7] the defendant's continued representation by Court-appointed counsel under the Criminal Justice Act, and the defendant's current and anticipated monetary penalties (*e.g.*, the outstanding disgorgement and civil penalty owed to the Securities and Exchange Commission and the anticipate disgorgement order in the parallel civil proceeding), it appears unlikely that the defendant will be able to pay a fine.

---

[6] The fine range for this offense is from $2,000 to $20,000. U.S.S.G. § 5E1.2(c)(3).

[7] The government has been provided and reviewed a subset of the defendant's financial records. *See, e.g.*, Financial Affidavits, Dkt. Nos. 4, 90, 103, and 131.

*III.     Conclusion*

For the reasons set forth above, the government respectfully requests that the Court sentence the defendant to a period of incarceration at the high end of the GSR, three years of supervised releasee, a special assessment of $100, and no fine.

<div style="margin-left: 50%;">

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Christopher J. Markham*
      CHRISTOPHER J. MARKHAM
      LESLIE A. WRIGHT
      Assistant United States Attorneys

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: July 24, 2024                                    */s/ Christopher J. Markham*
                                                        CHRISTOPHER J. MARKHAM
                                                        Assistant United States Attorney