UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
                                  )
            v.                    )          CR. No. 24-10048-MLW
                                  )
CRAIG MEDOFF,                     )
      Defendant.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                      January 31, 2025

TABLE OF CONTENTS

I. SUMMARY ..................................................... 3

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................. 11

    A.    The 2012 Civil Case ................................... 11

    B.    The SEC's Motion For Civil Contempt .................. 14

    C.    The Institution of Criminal Contempt Proceedings ..... 20

    D.    Medoff's Motion to Recuse ............................ 24

    E.    The First Proposed Binding Plea Agreements ........... 31

    F.    Medoff's Promissory Estoppel Claim ................... 33

    G.    Medoff's Appeal of the Denial of His Motion to Recuse 35

    H.    The April 29, 2024 Hearing ........................... 36

      i.  Medoff's Fails His First Drug Test ................... 36

    ii.  Medoff's Second Proposed Binding Plea Agreement ...... 37

    I.    Medoff's Petition for Mandamus ....................... 39

    J.    Medoff's Guilty Plea and Release Pending Sentencing .. 40

    K.    The Revocation of Medoff's Release ................... 42

    L.    Notice Regarding Potential Variance .................. 43

    M.    Medoff's Sentence .................................... 46

III. DISCUSSION ............................................... 56

    A.    The Standard for Release Pending Appeal .............. 56

    B.    Medoff's Appeal of His Sentence Does Not Present a Close Question ........................................... 58

    C.    Medoff's Appeal of The Denial of the Motion for Recusal Does Not Present a Close Question .................... 67

IV. ORDER .................................................... 81

I. SUMMARY

In Securities and Exchange Commission v. Biochemics, Inc. et al., Civil No. 12-12324, in June 2016, the court issued a Final Judgment enjoining defendant Craig Medoff from participating in the offering or sale of securities for 10 years. In February 2024, the court charged Medoff, in the manner prescribed by Federal Rule of Criminal Procedure 42, with criminal contempt for violating that injunction after it was informed that: soon after the injunction was issued, and for seven years thereafter, Medoff violated the injunction by engaging in the offering and sale of securities using the alias "Alexander Carlin"; Medoff had received about $1,650,000 as a result of violating the injunction; and Medoff had a long history beginning in the 1990s of violating court and SEC orders not to engage in the offering or sale of securities, and a 1995 conviction for committing securities fraud for which he served 12 months in prison after violating the conditions of his probation.

After Medoff's many unmeritorious motions were denied, in May 2024 he pled guilty to the charge of criminal contempt in violation of 18 U.S.C. §401(3). The court released Medoff pending sentencing.

On June 3, 2024, the court revoked Medoff's pretrial release because he had repeatedly tested positive for using cocaine and repeatedly lied to the court and Probation Officers about his use

3

of drugs.

On August 7, 2024, the court sentenced Medoff to 20 months in custody, which was a 10-month upward variance from the high end of the Guidelines range. Medoff did not object to the sentence. Nor did he then request release pending appeal.

Medoff has appealed and now moves for release pursuant to 18 U.S.C. §3143(b)(1). Dkt. No. 187. That statute requires, among other things, that the appeal raises a "substantial question" of law or fact likely to result in reversal or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. §3143(b)(1)(B)(i) and (iv). A "substantial question" is a "'close' question" or one that could very well be decided the other way." United States v. Zimny, 857 F.3d 97, 100 (1st Cir. 2017) (citation omitted).

Medoff argues that his appeal raises two substantial questions: (1) whether his 20-month sentence is unreasonable; and (2) whether the denial of his March 20, 2024 motion to recuse pursuant to 28 U.S.C. §455(a) was justified. For the reasons described in detail in this Memorandum,[1] neither is the substantial question required

_____

[1] In deciding a motion to recuse under §455(a) the record as a whole must be considered. See In re Cargill, Inc., 66 F.3d 1256, 1260 (1st Cir. 1995). Therefore, this Memorandum includes a lengthy description of the relevant record, which includes many motions,

to merit release pending appeal.

More specifically, it is not a close question whether the 20-month sentence will be found to be unreasonable. Because Medoff did not object to the sentence in the District Court, the First Circuit will review his claims that his sentence was procedurally and substantively unreasonable only for plain error. See United States v. López-Felicie, 109 F.4th 51, 57 (1st Cir. 2024). "The plain error standard is not easy to meet because it requires error, plainness, prejudice to the defendant, and the threat of a miscarriage of justice." United States v. Contreras-Delgado, 913 F.3d 232, 238 (1st Cir. 2019) (internal quotation and citation omitted).

Potential procedural error at sentencing may include "'failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" Contreras-Delgado, 913 F.3d at 238 (quoting Gall v. United

---

hearings, decisions, and orders, amounting to 81 docket entries in the related civil case since September 2023, when the SEC requested that Medoff be held in civil contempt, and 190 docket entries in this case since the court charged Medoff with criminal contempt in February 2024.

States, 552 U.S. 38, 51 (2007)).

Medoff does not claim that the court improperly calculated the Guidelines range, treated the Guidelines as mandatory, failed to consider all of the §3553(a) factors, or failed to adequately explain the reasons for its variance to a 20-month sentence. See Dkt. No. 187 at 15-17. Rather, Medoff argues, in part, that "the Court misapplied the factors of general deterrence and incapacitation, [] §3553(a)(2)(B)-(C)." Id. at 15. He also contends that the court "failed to adequately consider the need to avoid unwarranted disparity in sentencing" when it discussed the statistics in the Presentence Report ("PSR") concerning sentences in other cases. Id. at 17.

However, where, as here, the court discussed at sentencing the §3553(a) factors at issue, the First Circuit has viewed such arguments as claims concerning substantive reasonableness and held that the weighing of the §3553(a) factors is in the District Court's informed discretion. See United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011). In any event, the court addressed in more than adequate detail the needs for Medoff's sentence to serve the §3553(a) purposes of deterrence, protecting the public, and avoiding unjustified disparity in the context of discussing all of the other §3553(a) factors and explaining the reasons for the variance. See

Ex. 2, Aug. 7, 2024 Tr., Dkt. No. 183, at 34-56; see also §II.M &
III.B, infra. Therefore, Medoff has not presented a close question
of procedural unreasonableness under the plain error standard or
any other standard of review.

Medoff has also not presented a close question concerning
whether his sentence was substantively unreasonable. A sentence is
generally substantively reasonable if there is a plausible
sentencing rationale and a defensible result. See United States v.
Martin, 520 F.3d 87, 96 (1st Cir. 2008). There is often a broad
range of sentences that the First Circuit will find reasonable. See
United States v. Ramirez-Ayala, 101 F.4th 80, 89 (1st Cir. 2024).
Therefore, challenging a sentence as substantively unreasonable "is
a burdensome task in any case," even if the usual abuse of
discretion, rather than a plain error standard, is applicable.
Clogston, 662 F.3d at 593-94.

"An upwardly variant sentence will generally be upheld if it
is anchored in a plausible, albeit not inevitable, view of the
circumstances sufficient to distinguish this case from the mine run
of case." United States v. Centariczki, 98 F.4th 381, 385 (1st. Cir.
2024). The First Circuit has found variances higher than 10 months
to be reasonable. See, e.g., United States v. Soto-Soto, 855 F.3d
445, 450-51 (1st Cir. 2017) (variance from the 11-month high end of

the Guidelines range to the statutory maximum of 24 months); United States v. Del Valle-Rodriguez, 761 F.3d 171, 176-77 (1st Cir. 2014) (variance from 105 to 120 months based in part on criminal history score underrepresenting the gravity of past criminal conduct).

It is undisputed that the court discussed in detail each of the §3553(a) factors, including the mitigating factor of Medoff's cooperation with the SEC in the related civil case, which Medoff's counsel failed to argue until the court reminded him of it. The court explained that it found Medoff's Criminal History category of II substantially underrepresented the seriousness of his past conduct and the risk that he would commit crimes, including criminal contempt, again in the future. The court also noted that Medoff had received $1,675,000 as a result of violating the injunction, but that was not included as loss or otherwise in the Guidelines calculation. In addition, the court noted that the 12 months Medoff had served in prison after being convicted for securities fraud did not deter him from committing the crime of contempt in this case and that he remained a risk of violating the securities laws that injunctions are intended to guard against. The court also stated that the 20-month sentence was appropriate to deter others from violating injunctions in securities cases.

Therefore, there is not a close question concerning whether

Medoff's sentence was substantively reasonable. There is also not a close question concerning whether the court was justified in denying the motion to recuse under §455(a) that Medoff filed in March 2024.

Section 455(a) requires a judge's recusal if "a reasonable person, fully informed of all the facts, would doubt [the judge's] impartiality." In re U.S., 158 F.3d 26, 31 (1st Cir. 1998); In re Allied-Signal, 891 F.2d 967, 970 (1st Cir. 1989). In making this decision the whole record must be considered. See In re Cargill, Inc., 66 F.3d at 1260. Where, as here, there is not an extra-judicial source for the alleged bias "[u]nder §455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." Liteky v. United States, 510 U.S. 542, 557-58 (1994) (Kennedy, J. concurring). "[T]he 'high threshold required for recusal under §455(a), id., recognizes the "reality" that "recusal motions are sometimes driven more by litigation strategies than ethical concerns." In re Cargill, Inc., 66 F.3d at 1262-63. The applicable standard prevents "parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." Allied-Signal, 891 F.2d at 970. Therefore, the First Circuit allows the district judge "a range

of discretion" in deciding whether recusal is required and will reverse the denial of a motion to recuse only if "it cannot be defended as a rational conclusion supported by the record." <u>Id.</u> Medoff does not contend the court used the incorrect standard.

The court's reasons for denying the motion to recuse were described in detail at the April 9, 2024 hearing. <u>See</u> Ex. 1, Apr. 9, 2024 Tr., Dkt. No. 47, at 34-56.

As explained in §II.D <u>infra</u>, a reasonable person would know that throughout the civil and criminal contempt proceedings, the court treated Medoff respectfully. Indeed, Medoff cited no statement by the court as evidence that could allegedly be perceived as bias except the court's statements that it does not issue orders that it does not intend to enforce.

Medoff did complain about the court's rulings. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." <u>Liteky</u>, 510 U.S. 556. Rather, "[a]lmost invariably, they are proper grounds for appeal not recusal." <u>Id.</u> This is true here.

In general, a reasonable person would know that: Medoff had admitted in the civil case that he violated the 2016 injunction before the court initiated this criminal case; the court complied with Rule 42 in doing so; Medoff agreed that the contempt did not

involve criticism or disrespect of the court so it was permissible for the court to preside in this case, see Fed. R. Crim. P. 42(a)(3); that the court did so carefully and fairly; and that after the court denied the March 2024 motion to recuse, Medoff's attorney said that it had "maybe been filed for righteous delay." Ex. 2, Aug. 7, 2024 Tr. at 72.

Therefore, again, there is not a close question whether the March 2024 motion to recuse will be reversed.[2]

As Medoff has failed to present a substantial, meaning close question that could be decided either way that is essential to merit release pending appeal, the motion is being denied.

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.   The 2012 Civil Case

In 2012, the SEC filed a related civil case (Case No. 12-CV-12324) alleging that Biochemics, Inc. and three individuals, including Medoff, participated in a fraudulent scheme to sell Biochemics securities to investors in violation of federal

---

[2] In the instant motion for release pending appeal, Medoff's current counsel makes additional arguments for recusal that were never before presented to the District Court. The court doubts that the First Circuit will consider them. However, the court addresses them in §III.C and explains why they too are without merit.

securities laws.[3] It was alleged that Medoff engaged in these activities despite being barred in the 1990s from acting as, or associating with, a broker or dealer, and permanently enjoined from violating the anti-fraud provisions of the federal securities laws. In the securities fraud case resulting in that injunction, Medoff was also ordered to pay a $95,000 fine, and to disgorge certain funds. Those payments were not made.

In 1995, Medoff pled guilty to engaging in a criminal conspiracy to commit securities fraud. He was sentenced to three years of probation and ordered to pay a $6,000 fine. Medoff was incarcerated for about 12 months for violating his conditions of probation by failing drug tests and not paying the fine. He was in federal prison when the 2012 civil case began.

In January 2016, the SEC requested that the court enter a consent judgment in the 2012 civil case requiring that Biochemics pay more than $17,000,000 within 14 days. See Jan. 27, 2016 Tr., Case No. 12-CV-12324, Dkt. No. 174. The court rejected that proposed consent judgment because it was undisputed that Biochemics was unable to pay that amount in such a short period of time and the

---

[3] Citations to docket entries in SEC v. Biochemics, Inc. et al., Civil No. 12-12324 are preceded by Case No. 12-CV-12324. Other docket references are to the docket in this criminal case.

court discerned that Biochemics might never be able to pay it. Id. at 9. A revised proposed consent judgment that the court issued and Biochemics did not pay generated complex and protracted litigation during which the court repeatedly told the SEC that the court does not issue orders it does not intend to enforce. E.g., Jan. 27, 2017 Tr., Case No. 12-CV-12324, Dkt. No. 174 at 9, 12; June 15, 2017 Tr., Case No. 12-CV-12324, Dkt. No. 323 at 18; March 22, 2018 Tr., Case No. 12-CV-12324, Dkt. No. 413 at 25; Sept. 5, 2019 Tr., Case No. 12-CV-12324, Dkt. No. 563 at 11.[4]

On May 25, 2016, pursuant to an agreement between the SEC and Medoff, the court entered a Final Judgment against Medoff. See Case No. 12-CV-12324, Dkt. No. 204 (the "Final Judgment"). The Final Judgment, among other things, enjoined Medoff and "any entity owned or controlled" by Medoff, for a period of 10 years, "from participating in the issuance, offer, or sale of any security." Id. ¶V. In addition, the Final Judgment ordered disgorgement and prejudgment interest totaling $14,370.20, and payment of a $100,000 civil penalty. Id. at ¶VI.

---

[4] The court also noted, in declining in 2017 to approve the initial proposed settlement, that other judges shared the court's concern about the SEC's practice of presenting proposed judgments that would likely prove to be unenforceable. See June 15, 2017 Tr., Case No. 12-CV-12324, Dkt. No. 323 at 19.

B.   The SEC's Motion For Civil Contempt

On September 27, 2023, the SEC moved for an order requiring Medoff to show cause why he should not be held in civil contempt for violating the Final Judgment in a range of ways, including by participating in the sale of securities through his ownership or control of Nova Capital International LLC ("Nova"). See Case No. 12-CV-12324, Dkt. No. 735. The motion requested an order requiring that Medoff cease violating the Final Judgment and disgorge of all moneys that he obtained in violation of it. Case No. 12-CV-12324, Dkt. No. 737 at 12. It also asked the court to impose "such other sanctions as the Court deem[ed] appropriate, including additional civil penalties to ensure Medoff's future compliance." Id. The SEC provided substantial evidence that Medoff had engaged in the sale of securities through Nova in violation of the Final Judgment. See Case No. 12-CV-12324, Dkt. Nos. 738, 739. The SEC also informed the court that "Medoff is a recidivist violator of the federal securities laws who has been criminally convicted of conspiracy to commit securities fraud and twice been permanently barred from the securities industry in actions resolved in 1995 and 2016." Case No. 12-CV-12324, Dkt. No. 737 at 1.

In response, on October 13, 2023, the court wrote that an order for civil contempt might be futile and scheduled a hearing to address

whether it "should initiate civil or criminal contempt" proceedings. Oct. 13, 2023 Mem. & Order, Civ. No. 12-12324, Dkt. No. 741 at 3.

At an October 23, 2023 hearing, the court stated that, in view of Medoff's history of violating court orders and the substantial evidence that he had violated the injunction in the 2016 Final Judgment, the court doubted that an order directing Medoff to cease violating that injunction and ordering disgorgement would be obeyed. The court reminded the SEC of the court's unwillingness to issue an order requiring Biochemics to promptly pay millions to settle the SEC's case against it that foreseeably would not be obeyed, and of the court's repeated statements that it does not issue orders it does not intend to enforce. See Oct. 23, 2023 Tr., Civ. No. 12-12324, Dkt. No. 759 at 15-18.[5] The SEC responded that it did not have authority to move for criminal contempt. Id. at 16.

At that hearing, the court informed Medoff that he had a Fifth Amendment right not to say anything that might tend to incriminate him, and that anything he said might be used against him. Id. 8-9. Despite the court's warning that the civil case could become a

---

[5] The court understands that if after making good faith reasonable efforts a defendant cannot afford to pay a judgment, he cannot be held in contempt. See United States v. Rylander, 460 U.S. 752, 755 (1983); In re Power Recovery Sys., Inc., 950 F.2d 798, 804 (1st Cir. 1991).

criminal case, Medoff declined the court's offer to appoint Criminal Justice Act ("CJA") counsel, who was present, for him if Medoff could not afford to retain counsel. See id. at 6, 16. Medoff instead requested time to retain an attorney and to try to resolve the SEC's motion for civil contempt. Id. at 10-12, 24-25. The court granted that request and stated that if it were to make a decision that day, it "would initiate criminal contempt proceedings." Id. 24; see also Oct. 27, 2023 Order, Civ. No. 12-12324, Dkt. No. 758 at 1, 2 (reiterating the court's then-present inclination to initiate criminal contempt proceedings).

In a November 16, 2023 Joint Status Report, the parties reported that they had reached an agreement to resolve the SEC's motion for civil contempt. Civ. No. 12-12324 Dkt. No. 761. The agreement was contingent on Medoff providing certain information and documentation. Id.

In response, the court issued an Order stating that:

> As the parties evidently recognize, any such agreement would not limit the court's authority to initiate criminal contempt proceedings . . . as discussed in the October 13, 2023 Order . . . and at the October 2[3], 2023 hearing.

Nov. 22, 2023 Order, Civ. No. 12-12324, Dkt. No. 762 at 1-2.

On December 1, 2023, the court conducted a hearing concerning the proposed order, which, among other things, required Medoff to

provide a comprehensive accounting of both Medoff's and Nova's assets. At the hearing, the court noted: the parties' proposed order explicitly stated it would be entered without prejudice to the court initiating a criminal contempt proceeding; that civil and criminal contempt serve different purposes and may proceed simultaneously, citing United States v. Marquardo, 149 F.3d 36, 39, 41 (1st Cir. 1998); and that criminal contempt is intended to punish disobedience rather than to coerce compliance. Dec. 1, 2023 Tr., Civ. No. 12-12324, Dkt. No. 770 at 5. Nevertheless, the court said that it remained "open-minded" on whether to institute criminal contempt proceedings. Id. The court again reminded the parties that "anything said by or on behalf of the defendant could be used against him if there's a criminal proceeding. . .." Id. at 6. The court also said it was deferring deciding whether to institute criminal contempt proceedings. Id. at 40. After the December 1, 2023 hearing, the court entered the parties' jointly proposed order. See Civ. No. 12-12324 Dkt. No. 767 at 3.

Although the court remained open-minded at that time concerning whether proceeding by civil contempt alone would be appropriate, information subsequently provided by Medoff pursuant to the parties' jointly proposed order prompted the court to conclude that criminal contempt proceedings were justified and appropriate.

17

More specifically, on February 5, 2024, after discovery in the 2012 civil case was complete, the SEC filed a Status Report indicating that Medoff had, since 2016, owned and controlled Nova and, through it, engaged in the offer and sale of securities in violation of ¶V of the Final Judgment. Case No. 12-CV-12324, Dkt. No. 781 at 2-3. Because an internet search would have revealed Medoff's criminal history and the injunctions against him, Medoff used the alias "Alexander Carlin" in connection with his Nova work. Id. at 3. The SEC estimated that Nova received approximately $1,800,000 in violation of the Final Judgment and that the net benefit to Medoff was approximately $1,650,000. Id. at 2-3. Therefore, the SEC expressed its intention to move "for a final order of [civil] contempt as to Mr. Medoff that, among other things, require[d] a specific dollar amount of disgorgement of fees received by Nova." Id. at 4. The SEC requested four to six weeks to obtain from the SEC Commissioners authorization to seek disgorgement. Id.

In a February 7, 2024 Order, the court responded:

> The SEC's February 5, 2024 Status Report suggests that promptly initiating criminal contempt proceedings for the alleged violations of the Final Judgment by Medoff may be most appropriate for several reasons, including but not limited to the risk that an order of disgorgement if Medoff is held in civil contempt may be futile.

Case No. 12-CV-12324, Dkt. No. 782 at 2. Therefore, the court ordered

the SEC to file a memorandum and affidavit addressing whether Medoff had the ability to pay approximately $1,675,000, or any other substantial sum if ordered to do so. It also permitted, but did not order, Medoff to do the same. Id.

In response, the SEC provided the following information on February 8, 2024:

- Medoff received approximately $200,000 annually for work done through Nova since June 2016;

- Medoff spent or distributed all of that money and had a negative net worth;

- Medoff is the beneficiary of a family trust with approximately $920,000 in liquid assets;

- The trust pays Medoff approximately $2,200 per month;[6]

- The Trustee, Medoff's cousin, provided trust funds for him to retain counsel to respond to the SEC's September 2023 motion for civil contempt;[7]

- The SEC elected not to include the trust assets in its calculation of Medoff's estimated net worth because, in its view, Medoff "did not exercise control or possession of" the trust assets.

Case No. 12-cv-12324, Dkt. Nos. 783, 783-1.

Medoff also filed an affidavit on February 8, 2024. Case No.

---

[6] In his February 8, 2024 affidavit, discussed below, Medoff stated that he received $2,500 per month from the trust. Case No. 12-CV-12324, Dkt. No. 784 ¶9.

[7] Medoff previously informed the court that the Trustee of the family trust is his cousin. E.g., Oct. 23, 2023 Tr., Case No. 12-CV-12324, Dkt. No. 759 at 11.

12-CV-12324, Dkt. No. 784. In it he stated, "I am deeply apologetic to the Court that I failed to comply with the 2016 Final Judgment . . .." Id. at ¶10 (emphasis added). Medoff stated that he had recently paid $10,000 toward the disgorgement and civil penalties ordered in the Final Judgment. In addition, Medoff stated that he did not have the "current ability to pay a substantial disgorgement or civil penalty," but that he was "in the process of arranging three separate revenue streams that, if successful, [would] enable [him] to pay the disgorgement penalties over time." Id. at ¶4. He also stated that he was willing to pay the SEC 20% of his income quarterly in order to do so. Id. at ¶9.

    C.    The Institution of Criminal Contempt Proceedings

    On February 7, 2024, the court issued an order giving notice that it would conduct a hearing on whether it should institute criminal contempt proceedings. See Case No. 12-CV-12324, Dkt. No. 782. On February 9, 2024, the court conducted that hearing. The SEC reiterated that, as stated at the October 23, 2024 hearing, it did not have the authority to move for criminal contempt. See Feb. 9, 2024 Tr., Case No. 12-CV-12324, Dkt. No. 799, at 4. The SEC stated that: it believed that Medoff had a negative net worth of $200,000; Medoff claimed that he had no assets to pay the fine imposed in 2016 or any order of disgorgement; and it believed that Medoff had ceased

violating the Final Judgment. Id. at 10-11, 13.

In arguing against the institution of criminal contempt proceedings, Medoff's counsel emphasized his cooperation with the SEC following the October 23, 2023 hearing. Id. at 14-20. In addition, Medoff confirmed the statement in his affidavit that he was "deeply apologetic that [he] failed to comply with the 2016 Final Judgment." Id. at 20.

After hearing from the parties, the court stated that it would issue an order instituting criminal contempt proceedings, pursuant to 18 U.S.C. §401 and Fed. R. Crim. P. 42, because civil contempt alone would be insufficient and inappropriate. Id. at 21. The court stated that it would be futile to order Medoff to pay the previously imposed $100,000 fine and to disgorge almost $2,000,000. Id. at 22. The court also expressed doubt concerning whether Medoff would obey an order restricting his conduct. Id. The court reiterated that civil and criminal contempt serve different purposes. Id. at 21-23. The court said unlike an order of civil contempt that is intended to coerce, criminal contempt is intended to serve a public purpose, to punish disobedience of court orders and deter future violations, as the First Circuit, among others, have explained. Id. (discussing Marquardo, 149 F.3d at 39-40). The court stated that not only would holding Medoff in civil contempt be futile, but it would be

inadequate if he were proven guilty. Id. at 23.

The court orally initiated criminal contempt proceedings, alleging that Medoff knowingly and willfully violated ¶V of the Final Judgment by engaging in the offer and sale of securities by his conduct related to Nova. Id. at 21, 24 (citing Marquardo, 149 F.3d at 41 for the proposition that simultaneous or sequential civil and criminal contempt proceedings are permissible).

The court stated that it would issue a written decision to: provide further notice of the charge; set a date for a jury trial because Medoff could receive a sentence of more than six months if convicted; provide Medoff a reasonable time to prepare for trial; and request that the United States Attorney prosecute the case. Id. at 23-24; see also Fed. R. Crim. P. 42(a)(1). The court added that the trial would begin, if necessary, on April 1, 2024 and that "as the contempt does not involve disrespect or criticism of the judge," the court would "preside in the contempt proceedings as provided in Federal Rule[] of Criminal Procedure 42(a)(3)." Id. at 24; see also Fed. R. Crim. P. 42(a)(3), 46; 18 U.S.C. §§3142, 3144. Medoff's counsel did not object. See id.

The court also referred the matter to the Magistrate Judge for the determination of whether Medoff should be released pending trial that was required by Federal Rule of Criminal Procedure 42(a)(3).

22

Id.

On February 12, 2024, the court issued a Memorandum and Order memorializing and amplifying its reasoning and rulings at the February 9, 2024 hearing. See Dkt. No. 786. Medoff again did not object to the statement that "[a]s the alleged contempt does not involve disrespect or criticism of the judge, this court will preside in the contempt proceedings." Id. at 7.

On February 21, 2024, the court allowed Medoff's counsel in the civil case, Laura Kirshenbaum, to withdraw. It then appointed Peter Horstmann to serve as CJA counsel for Medoff in this matter. See Dkt. No. 5.

On February 28, 2024, the Magistrate Judge ordered Medoff released on conditions pending trial. Dkt. Nos. 15, 17. Medoff told the Probation Officer that he had not used drugs illegally since 2019. The Magistrate Judge did not make drug testing or treatment a condition of his release. Dkt. No. 17.

On February 29, 2024, the court allowed Medoff's assented-to motion to continue the April 1, 2024 trial and provided the parties the opportunity they requested to attempt to reach a proposed resolution of this case. See Dkt. No. 18.

In response to the court's February 29, 2024 Order, the parties filed a joint status report that, among other things, indicated that

Medoff might file a motion to disqualify this court. See Dkt. No. 20. Therefore, on March 14, 2024, the court issued an order requiring Medoff to file any motion to recuse by March 20, 2024, state whether it was solely [] pursuant to 28 U.S.C. §455(a), which requires recusal if a reasonable person could question the court's impartiality, and address the applicable standards set forth in cases the court identified. Dkt. No. 22 at 1-2.

The court also scheduled a hearing on any motion to recuse for March 28, 2024. Id. It stated its intention to begin trial on April 22, 2024 if a motion to recuse was denied. Id. at 2.

On March 20, 2024, Medoff moved to continue the trial from April 22, 2024 to September 2024, representing that the government assented to the requested continuance. Dkt. No. 25. On March 25, 2024, the court denied that motion to continue without prejudice. Dkt. No. 27.

D.    Medoff's Motion to Recuse

On March 20, 2024, Medoff filed his Motion to Recuse, the denial of which is one of the two grounds for his motion for release pending appeal. See Dkt. No. 24. Medoff did not allege that the court was actually biased or prejudiced and, therefore, that recusal was required under 28 U.S.C. §455(b). Rather, he contended that recusal was required only under §455(a) because a reasonable person

might question the court's impartiality. <u>Id.</u>

In doing so, Medoff wrote that "<u>[t]he defendant agrees that</u> <u>his contempt proceeding does not involve disrespect or criticism of</u> <u>the District Judge pursuant to Fed. R. Cr[im]. P., Rule 42(a)(3).</u>" <u>Id.</u> at 15 (emphasis added). Nevertheless, he argued that disqualification was required because the court raised the issue of criminal contempt without a request from the SEC. <u>Id.</u> at 2. He also asserted that the court was "fixated" on criminal contempt as evidenced by: its October 13, 2023 Order; statements at the October 23, 2023 hearing and in subsequent hearings and orders expressing doubt about whether Medoff would obey another order not to participate in the sale of securities, <u>id.</u> at 2, 4, 5, 10; and explaining what a criminal contempt proceeding would involve, <u>see</u> <u>id.</u> at 2-14. Among other things, Medoff argued that "[s]hockingly" the court "threatened Medoff could be detained pending trial for criminal contempt." <u>Id.</u> at 11.

Medoff also asserted that the court's references to his criminal history, repeated failures to obey court orders, and statements that it does not issue orders it does not intend to enforce would contribute to causing a reasonable person to question its impartiality. <u>Id.</u> at 16.

On March 26, 2024, the government filed a two-page response to

the motion for recusal. Dkt. No. 29. The government explained that
there was not a proper basis for requiring disqualification for
actual bias or prejudice under §455(b), which Medoff did not claim.
However, it stated:

> Nevertheless, in an abundance of caution—and because
> the Court has itself referred this matter to the
> government for prosecution—the government defers to the
> Court as to whether, in the unique circumstances in
> which a court has <u>sua sponte</u> initiated criminal contempt
> proceedings, the various defense contentions in this
> case meet the "high threshold . . . required to satisfy
> the § 455(a) recusal standard. [<u>Liteky</u>, 510 U.S. at
> 558], (Kennedy, J. concurring), based on the need to
> avoid the "objective appearance of" partiality.

<u>Id.</u> at 2.

    At an April 9, 2024 hearing, the court heard argument on the
motion to recuse. <u>See</u> Ex. 1, Apr. 9, 2024 Tr. at 1-33. Beginning on
page 34 of the transcript the court explained in detail its reasons
for denying the motion. <u>Id.</u> at 34-56. The court stated the following
legal standards for a meritorious §455(a) motion essentially as it
had explained them in <u>United States v. Sampson</u>, 148 F. Supp. 3d 75,
85-88 (D. Mass. 2015). <u>See id.</u> at 45-49. The question of whether
§455(a) requires a judge's recusal depends on "whether a reasonable
person fully informed of all the facts would doubt the judge's
impartiality." <u>In re U.S.</u>, 158 F.3d at 31. In making this decision
the whole record must be considered. <u>See In re Cargill, Inc.,</u> 66

F.3d at 1260. Where, as here, there is no extra-judicial source for the alleged bias "[u]nder §455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." Liteky, 510 U.S. at 557-58. In addition, "the 'high threshold required for recusal under §455(a), id., recognizes the "reality" that "recusal motions are sometimes driven more by litigation strategies than ethical concerns." See In re Cargill, Inc., 66 F.3d at 1262-63. Therefore, the court of appeals allows the district judge "a range of discretion" in deciding whether recusal is required and will reverse the denial of a motion to recuse only if "it cannot be defended as a rational conclusion supported by the record." Allied-Signal, 891 F.2d at 970. See Ex. 1, Apr. 9, 2024 Tr. at 45-49

The court went on to explain that what Medoff claimed was evidence of bias would be viewed by a reasonable disinterested person to be evidence of an effort by the court to be fair. Feb. 9, 2024 Tr., Case No. 12-CV-12324, Dkt. No. 799 at 50. For example, the court promptly and repeatedly put Medoff on notice that the SEC's motion for civil contempt might become a criminal proceeding and explained the nature of such a proceeding so he would not be misled to his detriment. Id.

In addition, the court repeatedly granted Medoff's requests for more time to try to resolve the civil case and develop evidence that a criminal contempt proceeding was not necessary or appropriate. Id. The court noted that Medoff's cooperation with the SEC and any other evidence could prove to be part of an argument for a lesser sentence if Medoff was charged with criminal contempt and convicted. Id.

The court also explained that initiating criminal contempt proceedings sua sponte was neither improper nor uncommon, and was particularly appropriate where the SEC had no authority to seek criminal contempt. Id. at 51. The court noted that the Supreme Court had held in Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 799 (1987), "in-court and out-of-court contempts . . . both proceed at the initiation of the court." Id. The court cited cases indicating that district judges often initiate criminal contempt proceedings. Id. at 51-52 (citing In re Grand Jury Proceedings, 875 F.2d 927, 930, 934 (1st Cir. 1989); MacNeil v. United States, 236 F.2d 149, 151 (1st Cir. 1956); United States v. Donziger, 38 F.4th 290, 294, 304-05 (2d Cir. 2022); and Angiodynamics v. Biolitec AG, 946 F. Supp. 2d 205, 215 (D. Mass. 2013)).

With regard to whether the pace of the proceedings would contribute to causing a reasonable person to believe the court was

biased the court stated that it repeatedly granted Medoff's extensions of time in the civil case. Id. When on February 12, 2024 it scheduled an April 1, 2024 trial in the criminal case, Medoff was represented by counsel fully familiar with the evidence who could advise Medoff on whether to go to trial or plead guilty, and, if necessary, prepare for an April 1, 2024 trial. Id. When successor CJA counsel was appointed, the court promptly allowed his motion for more time to prepare for trial. Id. at 53. The trial date was continued again to April 22, 2024, which should have provided ample time for counsel to prepare to address a straightforward charge. Id. at 52-53.

The court also explained that the institution of criminal contempt proceedings would require a bail hearing would not be viewed as "shocking" evidence of bias. Rather, a reasonable, fully informed person would know such a hearing was required pursuant to Fed. R. Crim. P. 42 and 18 U.S.C. §§3142 and 3144. Id. at 53-54.

The court indicated that prior references to not issuing orders that it does not intend to enforce with regard to the SEC's first proposed settlement with Biochemics would reasonably be viewed as evidence that saying the same to Medoff was not an indication of bias or prejudice, but only evidence of the court's longstanding determination to require obedience to all of its orders. Id. at 54-

55.

In addition, the court explained why this case is not analogous to the case on which Medoff principally relied, <u>United States v. Antar</u>, 53 F.3d 568 (3d Cir. 1995). <u>Id.</u>

The court concluded its reasoning by saying:

> I admire zealous advocacy. However, as Mr. Horstmann has indicated that this decision may be appealed, a decision I understand will be reviewed for abuse of discretion, I'll say the following respectfully.
>
> This motion to recuse appears to me to be frivolous. It appears to me to be an effort to . . . further delay the trial. It is, in my view – and I'm not the ultimate arbiter if there's an appeal [] –- an effort to manipulate the system for strategic purposes, perhaps to obtain another judge who would have to do a great deal of work to prepare, and [] at a minimum, to further delay this matter.

<u>Id.</u> at 56. While Mr. Horstmann denied he was shopping for a better judge, he acknowledged that the motion was filed for "[m]aybe righteous delay." <u>Id.</u> 61-62.

The court also expressed concern about the government's reasoning in declining to take a position on the motion to recuse. It told the prosecutor that "it causes me to doubt whether your office has the intention to properly prosecute this case." <u>Id.</u> 8; <u>see also</u> <u>id.</u> at 56.

The court postponed the April 22, 2024 trial date to April 29, 2024 in order to provide Mr. Horstmann more time to prepare. <u>See</u>

id. at 53, 59-60.

On April 10, 2024, the court issued an Order memorializing its oral decision denying the motion to recuse. Dkt. No. 45. In that Order, the court informed Medoff that to obtain immediate appellate review of the denial of his motion to recuse, he would have to seek a writ of mandamus and explained the process for doing so. Id. at 1. The order reiterated that the motion appeared frivolous and, as Mr. Horstmann conceded, "maybe" filed to obtain "righteous delay." Id. at 2-3.

E.    The First Proposed Binding Plea Agreements

On April 10, 2024, the court also issued a Pretrial Order memorializing the deadlines for pretrial filings established at the April 9, 2024 hearing. Dkt. No. 44. The parties did not make the required filings. Instead, on April 16, 2024, the parties filed a motion for a Rule 11 hearing on a proposed Federal Rule of Criminal Procedure 11(c)(1)(C) binding plea agreement which, if accepted, would have required the court to sentence Medoff to 0 to 3 months in prison followed by 12 months of Supervised Release. See Dkt. Nos. 46, 46-1.

On April 17, 2024, the court issued an eight-page Order denying the request for a hearing on the parties' proposed binding plea agreement. Dkt. No. 49. Citing Hughes v. United States, 584 U.S.

675, 682 (2018), and the requirement that the court must consider whether the agreed sentence is within the applicable Guidelines range or outside the applicable range for justifiable reasons that are set forth with reasonable specificity, the court explained Medoff's expected Guidelines range would be at least 4-10 months and the court was unwilling to be bound to impose a below-Guidelines, variance without more information. Among other things, the court wrote:

> As explained earlier, the court repeatedly informed the parties that it was ordering a jury trial because a six-month sentence might not be sufficient if Medoff is convicted. They should have foreseen that the court would not now accept a guilty plea and as is common practice, pursuant to Fed. R. Crim. P. 11(c)(3)(A), defer until sentencing deciding whether to accept the binding plea agreement because the court would likely then reject the binding plea agreement.
>
> * * *
>
> If Medoff is convicted or decides to plead guilty without a Rule 11(c)(1)(C) binding plea agreement, the court will order the preparation of a Presentence Report, receive sentencing memoranda, conduct a sentencing hearing, and decide what sentence is sufficient and no more than necessary, as required by 18 U.S.C. §3553(a). That sentence could be in the 0-to-3-month range or less than 6 months. It could be higher.

Id. at 5-7. The court stated that it was unwilling to defer decision on whether to accept the binding agreement until a presentence investigation had been conducted because "[i]f the court did reject

the plea agreement at sentencing, Medoff would, pursuant to Rule 11(c)(5)(B), be entitled to withdraw his plea, thus obtaining the lengthy postponement of his trial that he has repeatedly sought unsuccessfully." Id. at 6.

The court also wrote that:

> If Medoff wishes to enter a guilty plea which is not pursuant to a Rule 11(c)(1)(C) agreement, he shall, by April 22, 2024, inform the court in order to spare counsel the time and expense of preparing further for trial and spare potential jurors from being ordered to appear for trial on April 29, 2024 unnecessarily.

Id. at 8.

On the deadline ordered by the court, April 18, 2024, the government made the required pretrial submissions.

F.    Medoff's Promissory Estoppel Claim

Medoff's submission was made after 6:00 p.m. on April 18, 2024. Therefore, pursuant to Local Rule 5.4(d), it was deemed filed the following business day, a day late. However, Medoff was not penalized for the late filing.

In what was captioned as a Motion in Limine, but was actually a motion to dismiss or suppress that should have been filed much earlier, Medoff contended that the doctrine of promissory estoppel, which he mentioned but did not argue in his motion to recuse, required a finding that he could not be prosecuted because of

statements made by the court in connection with the SEC's motion for civil contempt. <u>See</u> Dkt. No 57. In the motion, Mr. Horstmann acknowledged that "the district court apparently did not intend to induce reliance on a pathway for ordering criminal contempt." <u>Id.</u> at 5. Nevertheless, he asserted that the court was "intimating that if Medoff co-operated with the SEC, the court would forego a criminal contempt proceeding." Dkt. No. 57-1, ¶¶5, 6.

In an April 23, 2024 Memorandum and Order, the court denied Medoff's motion. <u>See</u> Dkt. No. 62 at 3-13. The court discussed the applicable Massachusetts law concerning promissory estoppel, which requires a statement intended to induce reliance, and the First Circuit decision which required a statement that would reasonably be expected to induce reliance, and actual reliance, which is required by both. <u>See</u> <u>id.</u> at 4-5 (citing <u>Sullivan v. Chief Just.</u> <u>for Admin. & Mgmt. of Trial Ct.</u>, 448 Mass. 15, 27-28 (2006) and <u>Rockwood v. SKF USA Inc.</u>, 687 F.3d 1, 10 (1st Cir. 2012)).

The court denied the motion in part because:

> No affidavit from Medoff has been submitted. There is, therefore, no evidence that Medoff himself claims to have been misled by anything that the court said or wrote in the prior proceedings. His failure to file such an affidavit is unlikely to be the result of an inadvertent error by his experienced counsel. Rather, it may reflect a recognition that there would be a risk that Medoff might be prosecuted for perjury if he made such a claim under oath.

Id. at 6.[8]

The court recounted its repeated statements that allowing Medoff to work with the SEC in an effort to resolve the motion for civil contempt was without prejudice to the court's right to institute criminal contempt proceedings. Id. at 6-10. The court then explained why the motion was unmeritorious. Id. at 11-12.

On April 23, 2024, the court rescheduled trial to begin on May 20, 2024. See Dkt. No. 62.

G.    Medoff's Appeal of the Denial of His Motion to Recuse

On April 23, 2024, Medoff filed a notice that he was appealing to the First Circuit the court's April 9, 2024 order denying his motion to recuse. Dkt. No. 60.

On April 26, 2024, the court issued an Order explaining that Medoff had not filed a petition for mandamus, but rather, despite the April 10, 2024 Order, filed an improper notice of appeal. See Dkt. No. 68 at 2. The court further explained that even if such a petition were filed the court would retain jurisdiction to continue to prepare for the May 20, 2024 trial. Id. (citing cases).

---

[8] In a footnote, the court wrote: "Nor has Medoff's attorney in the SEC's case seeking civil contempt, Laura Kirshenbaum, filed an affidavit claiming that she or Medoff were misled." Dkt. No. 62 at 6 n.3.

H.   The April 29, 2024 Hearing

    i.   Medoff's Fails His First Drug Test

In the April 26, 2024 Order, the court scheduled an April 29, 2024 pretrial conference, at which the parties were ordered to be prepared to address whether Medoff's conditions of release should be modified to include drug testing and, if appropriate, drug treatment based on Medoff's appearance and conduct at the April 9, 2024 hearing, which caused the court to be concerned that he, an admitted long-time drug addict, was again using drugs illegally. Id. at 2-3.

At the April 29, 2024 hearing, in addition to other matters relating to the trial, this issue was addressed. Referencing Medoff's admitted history of drug abuse and treatment, the court noted that at the April 9, 2024 hearing he had his head on the table, spilled a glass of water, and was allowed at counsel's request to leave the courthouse before the hearing ended. See Apr. 29, 2024 Tr., Dkt. No. 92, at 31-35.

Medoff's counsel argued against the proposed drug testing and treatment conditions. Id. Despite Mr. Horstmann's urging that Medoff remain silent, Medoff insisted on speaking. Id. at 37. Medoff admitted being a "freebase cocaine" addict but claimed that his conduct on April 9 was because of an illness not use of cocaine,

which would have made him "frenetic" not lethargic. Id. at 33-34. Nevertheless, the court decided to make drug testing and, if appropriate, treatment an additional condition of Medoff's release. Id. at 34-35. The court also ordered that Medoff be tested that day. Id.

The April 29, 2024 urinalysis immediately came back positive for marijuana and cocaine. See id. at 35. Medoff told the Probation Officer he had used marijuana edibles. Id.

The court could have revoked Medoff's pretrial release then for violating federal and state drug laws, thus violating the condition requiring that he not commit any crime while on release. Id. at 37-38. However, the court continued Medoff's release and warned him that if he tested positive again for anything, there was a substantial risk his release would be revoked. Id.

        ii.  Medoff's Second Proposed Binding Plea Agreement

Earlier, on April 29, 2024, the parties filed a motion for leave to file a second proposed Rule 11(c)(1)(C) binding plea agreement providing for a sentence in the 4 to 10 months range, and a government recommendation of a 4-month sentence. See Dkt. No. 69.[9]

---

[9] The Motion was filed at 7:15 p.m. on Friday, April 26, 2024. Under Local Rule 5.4(d), it was deemed filed Monday, April 29, 2024. See Apr. 29, 2024 Tr., Dkt. No. 92, at 3. The court allowed the filing. See Dkt. No. 72.

At the April 29, 2024 hearing the court rejected the proposal. See Apr. 29, 2024 Tr., Dkt. No. 92, at 6-9. It noted that in the April 17, 2024 Order it had stated that the Guidelines range was "at least" 4-10 months and might be higher because of at least one conviction that was not scored. Id. at 7. The court also pointed out that the 2-point reduction for acceptance of responsibility that the parties included in their calculation is not "automatic" when a defendant pleads guilty and in this case might be denied because any plea might be untimely because it would be after the government and the court had done substantial work to prepare for an imminent trial. Id. (citing U.S.S.G. §3E1.1(a), Application Note 1(H); United States v. Blanco, 888 F.2d 907, 911 (1st Cir. 1989)).

In addition, if Medoff did not receive the 2-point reduction for acceptance of responsibility, his offense level would be 10 and his Guidelines range would be 8-14 months. Therefore, the 4-month sentence the government would be recommending would not be within the Guidelines range, and an 8-10 month sentence might not be sufficient. See id. at 7-8. In addition, the court noted that in view of Medoff's history an upward departure under U.S.S.G. §4A1.3 might be justified because Medoff's Criminal History score of II might be found to substantially underrepresent the risk of recidivism. Id. at 8-9.

The court stated that it "continue[s] to be open-minded about what sentence will prove to be sufficient and no more than necessary to serve the statutory purposes of sentencing if Mr. Medoff[] [is] convicted at [the] trial that going to start on May 20 or pleads guilty without a binding plea agreement." Id. at 10. However, the court added that it was not willing to commit to giving a sentence of 10 months or less without a Presentence Report, hearing argument from counsel, and hearing from Medoff if he chose to speak at any sentencing hearing. Id. The court stated that it did not want to risk further delay by accepting a plea pursuant to a binding plea agreement that might be rejected at sentencing. Id.

Medoff did not renew his motion to recuse after the court rejected his two proposed binding plea agreements.

I.   Medoff's Petition for Mandamus

On May 8, 2023, Medoff filed in the First Circuit a document that he styled as a petition for a writ of mandamus that would, if granted, order the court's recusal. See Medoff v. United States, Court of Appeals No. 24-1460, 5/08/2024 Entry.

On May 13, 2024, the case was submitted to a three-judge panel of the First Circuit, which entered judgment the following day, stating:

> Petitioner Craig Medoff, the subject of criminal
> contempt proceedings initiated by the district court,
> seeks the recusal of the district judge on the grounds
> that a reasonable person could question the judge's
> impartiality. See 28 U.S.C. § 455(a). We have carefully
> considered the petition and the district court record
> and conclude that petitioner has not satisfied the
> stringent requirements for mandamus relief. See In re
> Bulger, 710 F.3d 42 (1st Cir. 2013). The petition for
> mandamus having been denied, petitioner's Emergency
> Motion to Stay the Trial is denied as moot.

Medoff v. United States, Court of Appeals No. 24-1460, 5/14/2024

Judgment.

J.    Medoff's Guilty Plea and Release Pending Sentencing

On May 15, 2024, Medoff filed a motion to enter a non-binding

plea without any agreement with the government. Dkt. No. 113.

In addition, on May 15, 2024, Probation filed a petition to

revoke Medoff's pretrial release because he had tested positive for

cocaine on three additional dates in May after his initial April

29, 2024 positive test.

At a May 16, 2024 hearing, Medoff again admitted that he had

violated the Final Judgment and pled guilty to the charge of criminal

contempt. May 16, 2024 Tr., Dkt. No. 153, at 24, 27-28. The court

scheduled sentencing for August 7, 2024. Id.

The court then addressed whether Medoff should be released

pending sentencing. Id. at 29. It found that Medoff had proven that

he was not likely to flee. Mr. Horstmann acknowledged that Medoff

had lied when he told the court on April 29, 2024, that he was not using drugs and tested positive an hour later. Id. at 37. Nevertheless, the court found that Medoff's apparent repeated drug use would not present a danger to any other person or the community. Id. at 61.[10]

The court expressed concern, however, that Medoff would present a danger to a business associate. A proposed government trial exhibit was a threatening text Medoff had sent his associate. Id. at 30. In it Medoff said that his associate was "screwing" him out of money and "GUARANTEE[D]" he would retaliate. Id. Medoff suggested that his associate contact the Organized Crime (Mafia) section of the FBI to confirm Medoff's Mafia ties. Id. Medoff concluded by writing "you have no idea what I'm capable of." Id.

Nevertheless, after receiving testimony about the reliability of Medoff's repeated positive drug tests, the court allowed Medoff to be released pending sentencing, stating that it was a close question and the court was not confident its decision was correct.

---

[10] The court noted that if it addressed the issue of detention before taking Medoff's guilty plea, he could have been detained pursuant to 18 U.S.C. §3142, if the court found that he was not likely to abide by the condition prohibiting him from using drugs, and therefore Medoff had benefitted from the order in which the court addressed the matters at the April 24, 2025 hearing. Id. at 37.

Id. at 61. The court concluded the hearing with an admonition that the court had given him "the benefit of great doubt in permitting [his] release and that it is " very important" that he scrupulously obey each condition of release. Id. at 75.

In addition, in an ex parte session with Medoff and his counsel the court discussed its concern about the accuracy of information in the affidavit Medoff filed to establish his eligibility for the appointment of CJA counsel. Id. at 63-75. Medoff's CJA affidavit stated that he owed Mark Levy $232,500. Dkt. No. 4. Levy worked with Medoff in Nova and other securities ventures. The court characterized Levy as an "unindicted co-conspirator" in the violation of the Final Judgment. Id. at 62. Further, because Medoff's submissions caused the court to question whether Levy was holding funds from Nova that were actually Medoff's, the court ordered that Medoff not communicate directly or indirectly with Levy, except through Mr. Horstmann to the extent necessary to transition any accounting matters from Levy to Medoff. Id. at 62. The court also issued written orders memorializing its oral orders regarding Medoff's release conditions. See Dkt. Nos. 122, 125.

K.    The Revocation of Medoff's Release

On May 31, 2024, Probation filed a Fourth Amended Petition for possible revocation of Medoff's release because he had tested

42

positive for cocaine on April 29, 2024; May 3, 2024; May 6, 2024, when Medoff said he used cocaine once on April 23 and denied any other use; May 10, 2024; and May 15, 2024. See Dkt. No. 150. Medoff initially claimed that any cocaine in his system was as a result of his single use on April 23, 2024. Id. However, after reports from the national laboratory used by Probation provided evidence that cocaine cannot be detected more than 2 to 5 days after use, Medoff sent an email to Probation stating:

> Prior to April 25, I used freebase cocaine four times per week, 1/8 to 1/4 oz per night, approximately 75% (.75) of one ounce or 21 grams per week. I used this quantity for six weeks in a row before April 25, 2024.

Id. at 3.

The court conducted a hearing on the Fourth Petition on June 3, 2024. See June 3, 2022 Tr., Dkt. No. 163. After hearing testimony from the doctor in charge of the national lab, and argument of counsel, the court revoked Medoff's release pursuant to 18 U.S.C. §3143.

L.    Notice Regarding Potential Variance

After reading the July 31, 2024 PSR, on August 5, 2024 the court issued a Memorandum and Order informing the parties that they should be prepared to address at the August 7, 2024 hearing several issues that could result in a sentence of more than 10 months, which

Probation had calculated as the high end of the Guidelines range. See Dkt. No. 175.

More specifically, the court put the parties on notice that an upward variance to 30 months might be justified and appropriate. Id. 3. First, the court noted that the PSR recommended that Medoff receive a two-level reduction for acceptance of responsibility despite the court's previous finding that he had lied repeatedly to the court and Probation concerning his drug use. The court wrote:

> Medoff pled guilty. However, "[a] defendant who enters a guilty plea is not entitled to an adjustment [for acceptance of responsibility under U.S.S.G. §3E1.1] as a matter of right." U.S.S.G. §3E1.1, A.N. 3. Lying to a Probation or Pretrial Services officer is not ordinarily a basis for an enhancement for obstruction of justice. See U.S.S.G. §3C1.1, A.N. 5(E). However, "such conduct may be a factor in determining whether to reduce the defendant's sentence under §3E1.1 (Acceptance of Responsibility)." Id. In view of the foregoing, the court intends to address whether Medoff should receive the recommended reduction for acceptance of responsibility and, if he does, whether his false statements concerning drug use should be considered a factor weighing in favor of an upward variance.

Id. at 2.

The court also wrote that:

> The PSR identifies as potential grounds for departure or variance: "U.S.S.G. §4A1.3, Criminal History Adequacy" and "U.S.S.G. 5K2.0 Aggravating/Mitigating Circumstances, including history of securities

violations." PSR ¶113. The court is considering whether an upward variance to a sentence of 30 months in custody should be found to be justified and appropriate after weighing the 18 U.S.C. §3353(a) sentencing factors.

At present, the court tentatively believes that there is reliable information indicating that Medoff's criminal history category substantially underrepresents the seriousness of his criminal history and the likelihood that he will commit crimes in the future. Therefore, as indicated by U.S.S.G. §4A1.3(a)(1), an upward variance may be warranted.

Similarly, Medoff's history of securities violations alone may warrant an upward variance in view of U.S.S.G. §5K2.0(a)(2)(B) and (a)(3). However, there are additional relevant considerations. These include the fact that the PSR does not recommend finding that the SEC is a victim of Medoff's criminal contempt or suffered any pecuniary harm as a result of it. Therefore, the PSR does not recommend finding that Medoff's criminal conduct caused any loss, despite the fact that Medoff did not pay a civil penalty of $100,000 or disgorge $14,370.20, as ordered in the underlying civil case. See Civ. No. 12-12324, Dkt. No. 204 at 4-5. Accordingly, U.S.S.G. §2B1.1(b)(1) has not been used to enhance Medoff's Guideline range. See U.S.S.G. §2B1.1, A.N. 3(A)(i). The court intends to accept this reasoning.

However, the PSR states that Medoff received approximately $1,675,000 while violating the injunction barring him from participation in the sale of securities. PSR ¶17. This fact is not included in the Guideline calculation. The First Circuit has recognized that while loss is generally "a proxy for the seriousness of the offense[, a] loss of zero [may be] presumptively wrong in [a] case [if] it does not even remotely approximate [the defendant's] wrongdoing." United States v. Parsons, 141 F.3d 386, 392 (1st Cir. 1998). The parties shall be prepared to discuss whether this is such a case and, if so, an upward variance is

      justified in part on this basis. <u>Cf.</u> U.S.S.G. §§2B1.1
      A.N. 21(A); 5K2.0(a)(2)(B).

<u>Id</u>. at 2-4.

    Therefore, the court put Medoff on notice before the August 7, 2024 sentencing that the court was considering a variance and imposing a 30-month sentence, and of the possible grounds for doing so. <u>See id.</u>

    M.   <u>Medoff's Sentence</u>

    On August 7, 2024, the court conducted a more than three-hour sentencing hearing. <u>See</u> Ex. 2, Aug. 7, 2024 Tr. After discussing each of the 18 U.S.C. §3553(a) factors in detail, the court explained why an upward variance from the 10-month high end of the Guidelines range to 20 months was the minimum necessary to serve the statutory purposes of sentencing Medoff. Medoff was advised of his right to appeal. His counsel did not object to the sentence in any way. He did not assert that the court made any procedural error or that the sentence was substantively unreasonable. Nor did he move for Medoff's release pending appeal.

    The PSR included information not previously known to the SEC, the government, and the court. Among other things, it stated that criminal records showed that Medoff had previously used the alias "Kevin Kelly" as well as "Alexander Carlin." PSR at 2, 38; Ex. 2, Aug. 7, 2024 Tr. at 7-8.

At the outset of the hearing, the court stated:

> I'd like to try to assure that we have a clear and
> common sense of the legal framework for sentencing. It's
> as was stated by the Supreme Court in Gall [v. United
> States, 552 U.S. 38 (2007)]. I have to begin by
> correctly calculating the guideline range. It's the
> starting point for determining the sentence, but it
> cannot be presumed to be reasonable. Rather, I have to
> consider the arguments of counsel, anything the
> defendant may choose to say, and all of the section
> 3553(a) factors in determining what sentence is
> sufficient and no more than necessary to serve the
> statutory purposes of sentencing.
>
> A substantial departure or variance requires a more
> significant justification than a minor one, and
> ultimately I have to decide what sentence is sufficient
> and no more than necessary to serve the purposes of
> sentencing and explain my reasons.
>
> Do the parties agree that's the legal framework?

Ex. 2, Aug. 7, 2024 Tr. at 5-6. Counsel stated that they each did

agree. Id.

In the course of the ensuing argument the court reminded the

parties that, as it wrote in the August 5, 2024 Order, the two-level

reduction for acceptance of responsibility under U.S.S.G. §3E1.1,

is not automatic when the defendant pleads guilty. Id. at 20-21.

Rather, where, as here, the defendant has repeatedly lied to the

court and Probation – in this case concerning his unlawful use of

drugs – the Guidelines state that he may be denied the reduction

for acceptance of responsibility. Id. at 21 (discussing U.S.S.G.

§3E1.1, Application Note 3). The court reiterated that if Medoff did get a reduction for acceptance of responsibility the parties should address whether his repeated false statements should be considered a factor weighing in favor of an upward variance. Id.

In arguing that Medoff should get a reduction for acceptance of Responsibility, Medoff's counsel did not mention Medoff's co-operation with the SEC in the civil contempt case. The court stated that it thought Medoff would argue:

> That in the underlying civil proceedings, when [the court] gave him an opportunity to work with the SEC, after [the court indicated it was] inclined to institute criminal contempt proceedings, . . . he cooperated and provided information . . . that showed an acceptance of responsibility . . . .

Id. at 22.

Mr. Horstmann responded: "Absolutely, Your Honor, and thank you for reminding me of that." Id. The court then stated, "You're welcome . . . . I'm trying to get this right. Id.

The court decided to give Medoff the two-point reduction for acceptance of responsibility. Id. at 24. It then directed the parties to address the weight, if any, Medoff's lies should be given in determining the most appropriate sentence. Id. at 24-25.

With acceptance of responsibility, the court then calculated the Total Offense Level as 8, the Criminal History category to be

II, and the Guidelines range to be 4 to 10 months. Id. at 25. The parties agreed that was correct. Id.

As the victim of the contempt, counsel for the SEC was, without objection, allowed to speak. Among other things, he said that "[t]he SEC's ability to obtain injunctions . . . goes to the core of the SEC's mission of investor protection." Id. at 26.

The government recommended that the court impose a 10-month sentence. Id. at 34 (referencing its sentencing memorandum, Dkt. No. 169). Among other things, it emphasized the importance that the sentence be sufficient to serve the interests of specific and general deterrence. Id. at 35-36. The government also explained that it was recommending a higher sentence than it had in the April 2024 proposed binding plea agreements in part because of Medoff's subsequent violations of his conditions of release, his multiple lies to the court and Probation, and additional relevant information disclosed in the PSR. Id. at 38. Although the government was not recommending an above-Guidelines sentence, it noted the First Circuit decision in Centariczki, 98 F.4th at 385, in which the court upheld an above-Guidelines sentence based in part on "'the appellant's violation of his Supervised Release terms and the multiple second chances offered him by the Court and the Probation Officer, which would, . . . hopefully deter him from repeating a

lifetime of the harmful conduct.'" Id. at 38 (quoting Centariczki, 98 F.4th at 385).

The court reiterated that the Guidelines calculation did not include as loss the more than $1,600,000 Medoff had received in violation of the Final Judgment. Id. at 43. It stated that if it did, the Guidelines range would have been 46 to 57 months. Id. at 43. The government said that the failure to include any loss was "odd" and an aggravating factor. The court reiterated that this could be a proper basis for an upward variance under the reasoning of Parsons, 141 F.3d at 392.

Mr. Horstmann recommended a sentence of time served – about 3 months – and argued in favor of it. Id. at 46-53. He asserted that Medoff's crime was motivated by his drug addiction and that was a mitigating factor. Id.

Next, Medoff addressed the court. Id. at 54-58. He said, among other things, that his drug addiction had caused him to misunderstand the injunction in the seven years he was working with Nova and apologized for that. Id. at 56.

The court then sentenced Medoff to 20 months in prison and three years of Supervised Release, and ordered Medoff to pay a $20,000 fine immediately. Ex. 2, Aug. 7, 2024 Tr. at 55-71.

The court explained that, although it had seriously considered

imposing a 30-month sentence:

> I've decided that 20 months is sufficient and no more
> than necessary to serve the Section 3553(a) statutory
> purposes of sentencing.
>
> In deciding the sentence, which is an upward variance
> from the high end of the guideline range of ten months,
> I've considered the totality of the circumstances,
> including each of the Section 3553(a) factors and
> including any mitigating factors, such as your
> cooperation with the SEC in the underlying civil case
> when it brought its motion . . . for civil contempt,
> although I believe that cooperation was motivated by
> the fact that I told you that I felt civil contempt
> would be futile and that criminal contempt proceedings
> would be more appropriate.

Id. at 60-61. The court cited First Circuit cases affirming
variances that it had considered. Id. at 71.[11]

The court found that this "case is different from the norm and
that an upward variance . . . to 20 months is reasonable and
necessary to serve the statutory purposes of sentencing." Id. at
61.

The court noted that the variance was justified in part because
Medoff's Criminal History category of II substantially under-
represented the seriousness of his past criminal conduct and the

---

[11] E.g., Centariczki, 98 F.4th at 385-86; Soto-Soto, 855 F.3d
at 450-51; Del Valle-Rodriguez, 761 F.3d at 176-77; United States
v. Politano, 522 F.3d 69, 74-75 (1st Cir. 2008); United States v.
Colón-Cordero, 91 F.4th 41 (1st Cir. 2024); López-Felicie, 109 F.4th
at 57.

likelihood that he would commit crimes again in the future, which is a basis for a departure under U.S.S.G. §4K1.3(c)(1). Id. at 61-62. The court noted that Medoff had served 12-months in custody for violating the conditions of his Supervised Release and that did not deter him from immediately violating the Final Judgment for seven years. Id. at 61-62. The court also noted that the Guidelines calculation did not take into account the $1,675,000 Medoff had received in violation of the Final Judgment and quoted the First Circuit's statement in Parsons, 141 F.3d 392, that "a loss of zero may be presumptively wrong in a case if it does not even approximate defendant's wrong doing." Id. at 67.

The court then proceeded to discuss each of the §3553(a) factors. Id. at 62-69. Medoff focuses on three of those factors in claiming his sentence was unreasonable, including asserting that "the Court misapplied the factor[s] of general deterrence and incapacitation, §3553(a)(2)(B)-(C)," and that the court "jettisoned" statistics relevant to the need to avoid unwarranted sentencing disparities. Dkt. No. 187 at 15, 17.

With regard to those §3553(a) factors the court stated at
sentencing:

> I find that more than ten months in custody is necessary
> to reflect the seriousness of your offense and promote
> respect for the law. It's also the minimum that I hope
> will be sufficient -- but I don't predict it will be
> sufficient -- to deter you from violating court orders
> in the future. You've been violating court orders
> barring you from offering or selling securities for 30
> years, including after you were convicted of securities
> fraud in 1995. And being incarcerated for 14 months, as
> I've said before, did not deter you from promptly
> violating the injunction from 2016 in this case, and I
> think a sentence of more than 14 months is needed to
> attempt to send you the message that the violation of
> court orders has to stop.
>
> It's also important to send the message -- to serve the
> interest of general deterrence to send the message to
> others who may have been caught and enjoined from
> violating the securities laws or from engaging in the
> securities business but think they don't have to take
> that seriously. Because such crimes -- it's a white-
> collar crime, it's a crime of calculation that people
> calculate that they won't get caught, if they get caught
> nothing serious will happen. But the fundamental
> principle of criminal law is that people will avoid the
> temptation to break the law, to violate court orders,
> among other things, if there's a threat of a serious
> sanction. And that concept of general deterrence is
> particularly important in the so-called white collar
> cases as the First Circuit recognized in Prosperi, 686
> F.3d 32, 37; and the Eleventh Circuit in Martin, 455
> F.3d 1227 to 1240.
>
> The sentence I've imposed is also needed to protect the
> public. You were barred from the securities business
> for good reason. The injunctions are issued against
> people who were perceived to be dangerous or a risk of
> danger, and you were dangerous, at least at one time,

of violating -- a danger, of violating the securities laws. You did it in 1995. You pled guilty to two counts of conspiracy to commit securities fraud.

And as I said, serving time in custody did not deter you from violating the injunction in this case, committing criminal contempt. So I continue to be concerned that you will violate . . . the orders barring you for life from the securities business and the injunction in this case, and there's a risk that you'll violate the securities laws in the future. You seem to be incorrigible, you seem to know better than everybody else. But incarceration will protect the public for at least the time you're in custody.

I haven't factored into the appropriate sentence your history of violence. In 1991, you allegedly attempted to shoot three New York City police officers who were trying to arrest you for rape and you pled guilty to criminal possession of a weapon and you were sentenced to Probation, which was quite a lenient sentence, but it didn't discourage you from committing securities fraud.[12] In 2001, you were convicted of spousal abuse. And, again, I haven't taken into account that you might be violent in determining the -- what sentence is sufficient, but I do note that in that spousal abuse case you were sentenced to 30 days and you served 30 days in jail and then you were on probation and then two times you violated your probation and served another 97 days. Part of a pattern of not obeying court orders that goes way back.[13]

I've considered your needs for mental health and drug treatment -- and you need mental health and drug treatment. But the Probation Office is excellent and it has good resources at its disposal, but I doubt that any services that the US Government can give you are

---

[12] Referring to PSR ¶41.

[13] Referring to PSR ¶44.

going to succeed where your 12 inpatient facilities and
many outpatient treatment programs have failed.

I have to consider avoiding unwarranted disparity. [W]e
have [in] a Presentence Report these days statistics
about people with the same criminal history score and
the same total . . . . offense level and criminal
history score and under 2B1.1, [you are a] . . . --
total offense level 8, [Criminal History category of]
II, and [the PSR] tells me . . . that [there were] very
few people in the last five years for that range, I
think maybe 73 . . . the average sentence was three
months.[14]

But every case is unique. I don't know anything about
those cases. I don't know if they're criminal contempt
cases. I don't know anything about the history and
characteristics of the people. But I doubt that many,
if any, have a combination of factors that make this an
exceptional case, including decades of flagrantly
violating court orders, in some instances federal
security laws.

Therefore, weighing all the factors, I find that a
variance to a sentence of 20 months is justified[,]
necessary[,] . . . reasonable[,] and perhaps generous
to you.

Id. at 68-70.

The court informed Medoff of his right to appeal. Id. at 66.

Medoff's counsel did not object to the sentence. See id. at 71-75.

After the imposition of sentence, the court stated that it had

not taken into account that court filings indicated that Medoff's

---

[14] The PSR ¶ 115 actually states that, for the 112 defendants
with a Total Offense Level of 8 under §2B1.1, and a Criminal History
category of II, the average sentence was three months and the median
sentence was four months. Id.

associate Levy might be holding Nova funds that actually belonged to Medoff, and expressed the hope that the government would consider this information in seeking to collect the fine the court imposed. Id. at 71. In response, Medoff shouted "Ridiculous. Just ridiculous." Id. at 72. Despite his attorney's urging to stop speaking, Medoff added that "you [the court] think you are smarter than [everyone else]." Id. at 73. The court informed Medoff that it could increase his sentence before recessing the hearing, but it did not. Id.

Medoff's statements after he had been sentenced were the first and only time he had been disrespectful or criticized the court.

III. DISCUSSION

    A.    The Standard for Release Pending Appeal

Medoff seeks release from custody pending appeal under 18 U.S.C. §3143(b)(1). That statute provides that, as a general rule, a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal, unless the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1).

In releasing Medoff after his guilty plea, the court found that he was not a risk of flight and, despite his threats to harm his business associate, he was not a threat to any person or the community. There is no evidence to alter that conclusion.

After admitting in the SEC's case seeking civil contempt that he violated the Final Judgment by participating in the offering and sale of securities through Nova while operating under the alias of Alexander Carlin, Medoff repeatedly sought to delay this criminal contempt case in which he was charged with willfully doing just that. However, the court does not find that the pending motion has been filed for the purpose of delay.

Medoff claims that whether his 20-month sentence was unreasonable presents the necessary substantial question. He also asserts that whether his motion to recuse was improperly denied

presents a substantial question.

The First Circuit has long defined a "substantial question" as "a 'close' question or one that very well could be decided the other way." See Zimny, 857 F.3d at 100 (quoting Bayko, 774 F.2d 516, 523 (1st Cir. 1985), quoting United States v. Giancola, 754 F. 2d 898, 901 (11th Cir. 1985)). For the reasons explained below, neither is a close question. Therefore, even assuming that a favorable decision on either or both issues would likely result in an order for a new trial or a shorter sentence than the time Medoff has already served, his request for release pending appeal is not meritorious. See Zimny, 857 F.3d at 98, 99 (quoting §3143(b)(1)(B) and discussing Bayko, 774 F.2d at 522)).

B.  Medoff's Appeal of His Sentence Does Not Present a Close Question

1.  Applicable Standards

Medoff asserts that his 20-month sentence was both procedurally and substantively unreasonable. However, his claim of procedural error should be reviewed as only a part of his claim of substantive unreasonableness. In any event, he has not presented a close question concerning his sentence. Zimny, 857 F.3d at 98; Bayko, 774 F.2d at 523.

The imposition of a sentence is reviewed for abuse of

discretion if an objection was made to it in the trial court. Gall, 552 U.S. at 46. The "touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011). The review is bifurcated: the court first determines whether the sentence imposed is procedurally reasonable and then determines whether it is substantively reasonable. See United States v. Rosario-Merced, 109 F.4th 77, 82 (1st Cir. 2024) (affirming 33-month upward variance).

However, Medoff did not object to his sentence in the District Court when it was imposed. Because Medoff's arguments challenging the procedural and substantive reasonableness of his sentence were not presented in the District Court, the First Circuit will "review them on appeal only for plain error." López-Felicie, 109 F.4th at 57. "To succeed under plain error review, an appellant must show (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantive rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 18. "The plain error standard 'is not easy to meet, because it requires error, plainness, prejudice to the defendant and the threat of a miscarriage of justice.'" Contreras-Delgado, 913 F.3d at 238 (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (quoting United States

v. Olano, 507 U.S. 725, 732-36 (1993))). Therefore, the plain error standard heightens the bar that Medoff must clear to present a close question.[15] However, this is not material because Medoff does not present a close question in any event.

2.  Procedural Error

Potential procedural error at sentencing may include "'failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall, 552 U.S. at 51).

Medoff does not claim that the court did not properly calculate the Guidelines range, treated the Guidelines as mandatory, failed to consider all of the §3553(a) factors or failed to adequately explain the reasons for its variance to a 20-month sentence. See Dkt. No. 187 at 15-17. Rather, Medoff argues, in part, that "the Court misapplied the factors of general deterrence and incapacitation," §3553(a)(2)(B)(c). Id. at 15. The First Circuit

_____

[15] Medoff does not mention or discuss the implications of the plain error standard in his memorandum in support of his motion for release pending appeal. See Dkt. No. 187 at 14-20.

has viewed such arguments as claims concerning substantive reasonableness. For example, it wrote in Clogston, 662 F.3d at 592, that "[t]he appellant contends that his sentence is substantively unreasonable because the district court put too much weight on some sentencing factors and not enough on others," including focusing too much on "the likelihood of recidivism," among other things.

In support of his claim of procedural error, Medoff contends that the sentence imposed was unreasonable because "the contemptuous conduct was not independently criminal." Dkt. No. 187 at 15. This is not true. 18 U.S.C. 401(3) makes disobedience of a lawful order a criminal offense – contempt. Indeed, as the Supreme Court wrote in 1987, "we have come to regard criminal contempt as 'a crime in the ordinary sense.'" Young, 481 U.S. at 799 (quoting Bloom v. State of Ill., 391 U.S. 194, 201 (1968)). Medoff was charged with this crime and pled guilty to committing it.

Medoff also incorrectly contends that "[d]eterring others from violating civil orders does not fit within the meaning of §3553(a)(2)(B)." Id. at 16. The First Circuit has written that sanctions for criminal contempt "are directed towards punishing the crime that has already been committed, and to act as a deterrent against future violations." Marquardo, 149 F.3d at 40. In view of Medoff's long history of violating SEC and court orders restricting

him from participating in the sale of securities, often with
impunity, and the failure of serving a 12-month sentence for
violating court orders to deter him from violating the injunction
in this case, it was not a procedural (or substantive) error for
the court to impose a 20-month sentence in part to "attempt to send
[him] the message that the violation of court orders has to stop."
Ex. 2, Aug. 7, 2024 Tr. at 68. It was important to try to deter
Medoff's violations because injunctions prohibiting the
participation in the sales of securities are intended to protect
against the risk that the defendant will in the future engage in
securities fraud, which would be difficult to detect. See Aaron v.
Sec. & Exch. Comm'n, 446 U.S. 680, 685 n.3 (1980) (SEC enforcement
actions for injunctive relief "serve to provide maximum protection
for the investing public.").

　　Medoff is also incorrect in contending that "[d]eterring others
from violating civil orders does not fit within the meaning of
§3553(a)(2)(B)." Dkt. No. 187 at 16. A willful violation of a civil
order is a criminal contempt. See United States v. Mourad, 289 F.3d
174, 180 (1st Cir. 2002); Marquardo, 149 F.3d at 43 n. 4; United
States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991). In the context
of an injunction barring the defendant from participating in the
sale of securities, it is a form of white-collar crime. The First

Circuit, among others, has "emphasized the importance of general deterrence of white collar crime." United States v. Prosperi, 686 F.3d 32, 47 (1st Cir. 2012); see also United States v. Mueffelman, 470 F.3d 33, 40 (1st Cir. 2006) (stating that "the deterrence of white collar crime" was "of central concern to Congress"); United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'" quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)).

Medoff also contends that "[s]eparately, the Court failed to adequately consider the need to avoid unwarranted disparity in sentencing." Dkt. No 187 at 17. He does not, and could not, complain that the court did not address this issue.

The PSR, ¶115, included statistics concerning the sentences for the 112 defendants in the past five years whose Total Offense Level under §2B1.1 was 8, and whose Criminal History category was II. The court noted at sentencing that the average sentence for those incarcerated was three months. Ex. 2, Aug 7, 2024 Tr. at 70. The PSR, ¶116, added that "[t]he sentencing data does not reflect the [Sentencing] Commission's recommendation regarding the

appropriate sentence to be imposed . . .."

Nevertheless, the court discussed the statistics. <u>See</u> Ex. 2,

Aug. 7, 2024 Tr. at 70. The court stated:

> But every case is unique. I don't know anything about
> those cases. I don't know if they're criminal contempt
> cases. I don't know anything about the history and
> characteristics of the people. But I doubt that many,
> if any, have a combination of factors that make this an
> exceptional case, including decades of flagrantly
> violating court orders, in some instances federal
> security laws.
>
> Therefore, weighing all the factors, I find that a
> variance to a sentence of 20 months is justified[,]
> necessary[,] . . . reasonable[,] and perhaps generous
> to you.

<u>Id.</u> at 70-71.

Therefore, this case is materially different than <u>United States</u>

<u>v. Oba</u>, 317 Fed. Appx. 698, 700 (9th Cir. 2009), and <u>United States</u>

<u>v. Killen</u>, 729 F. Appx. 703, 717 n.10 (11th Cir. 2018), which Medoff

cites because in those cases the sentencing judge did not address

the statistics or explain his reasons for an above-Guidelines

sentence.

The court concludes that Medoff has not presented a substantial

question, meaning a close question that could be decided either way,

of procedural unreasonableness under the plain error standard, the

inapplicable abuse of discretion standard, or any other standard of

review.

### 3.  Substantive Reasonableness

Medoff also claims that the variance to a 20-month sentence was substantively unreasonable. He mistakenly argues this contention will be reviewed for abuse of discretion. See Dkt. No. 187 at 17. Rather, because he did not object to the sentence in the District Court it too will be reviewed for plain error. See Rosario-Merced, 109 F.4th at 82.

Moreover, "[a]n upwardly variant sentence will generally be upheld if it is 'anchored in a plausible, albeit not inevitable, view of the circumstances sufficient to distinguish this case from the mine-run of cases.'" Centariczki, 98 F.4th at 385.

For substantive reasonableness, the "linchpin" is "a plausible sentencing rationale and a defensible result." Martin, 520 F.3d at 96; see also Rosario-Merced, 109 F.4th at 85 (same); Contreras-Delgado, 913 F.3d at 239 (same). Challenging a sentence as substantively unreasonable is "a burdensome task in any case." Clogston, 662 F.3d at 593-94. There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes. Martin, 520 F.3d at 92; Clogston, 662 F.3d at 592. The task of the court of appeals will be to determine whether the challenged sentence "falls within this broad universe." Ramirez-Ayala, 101 F.4th at 89 (quoting cases). "Reasonable judges can weigh

the same goals and factors and reach a range of reasonable results."
Rosario-Merced, 109 F.4th at 85.

Medoff contends that his 20-month sentence was unreasonable
because: the high end of the Guidelines range was 10-months; the
government recommended a 10-month sentence; and his 1995 conviction
for securities fraud did not support the extent of the variance.
See Dkt. No. 187 at 18-20.

However, the court is not bound by the government's
recommendation, but rather has the right and the duty to evaluate
all of the §3353(a) factors independently. See Clogston, 662 F.3d
at 593. The First Circuit has found variances longer than 10 months
to be reasonable. See, e.g., Soto-Soto, 855 F.3d at 451 (variance
from the 11-month high end of the Guidelines range to the statutory
maximum of 24 months); Del Valle-Rodriguez, 761 F.3d at 177
(variance from 105 month to 120 month based in part on criminal
history score underrepresenting the gravity of his past criminal
conduct).

As explained earlier, it is undisputed that the court discussed
in detail all of the §3353(a) factors. Again, Medoff essentially
complains about the weighing of these factors, which is in the
court's informed discretion. See Clogston, 662 F.3d at 592-93. In
view of the applicable plain error standard, and indeed under any

standard, Medoff has not demonstrated there is a substantial question concerning whether the 20-month sentence was substantively reasonable.

Therefore, Medoff's sentence does not provide a basis for granting his motion for release pending appeal.

C.    Medoff's Appeal of The Denial of the Motion for Recusal Does Not Present a Close Question

1.    Applicable Standards

At the April 9, 2024 hearing the court denied Medoff's motion for recusal under §455(a), which alleged that a reasonable person could question the court's impartiality. Medoff did not renew the motion after the court rejected his two proposed binding plea agreements later in April 2024. In the pending motion, Medoff makes arguments that were not made in the District Court and to some extent are inconsistent with arguments Medoff made previously. As explained below, whether the court properly denied the motion to recuse that was filed is not a close question. If the arguments Medoff now makes for the first time are also now considered, there is still not a close question.

At the April 9, 2024 hearing, the court explained the applicable §455(a) standard in detail, paraphrasing what it had previously written in Sampson, 148 F. Supp. 3d at 85-88. See Ex. 1,

Apr. 9, 2024 Tr. at 45-49. Medoff does not contend that the court used the incorrect legal standard in denying his motion.

Section 455(a) requires a judge's recusal if "a reasonable person fully informed of all the facts would doubt the judge's impartiality." In re U.S., 158 F.3d at 31; Allied-Signal, 891 F.2d 967, 970 (1st Cir. 1989) (citing In re U.S. of Amer., 666 F.2d 690, 694-95 (1st Cir. 1981)). In making this decision the whole record must be considered. See In re Cargill, Inc., 66 F.3d at 1260. Where, as here, there is no extra-judicial source for the alleged bias "[u]nder §455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." Liteky, 510 U.S. at 557-58 (Kennedy, J. concurring). In addition, "the 'high threshold required for recusal under §455(a), id., recognizes the "reality" that "recusal motions are sometimes driven more by litigation strategies than ethical concerns." In re Cargill, Inc., 66 F.3d at 1262-63. The applicable standard prevents "parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." Allied-Signal, 891 F.2d at 970. Therefore, the First Circuit allows the district judge "a range of discretion" in deciding whether recusal is required and

will reverse the denial of a motion to recuse only if "it cannot be defended as a rational conclusion supported by the record." Id.

The court's reasons for denying the motion to recuse were described in detail at the April 9, 2024 hearing. See Ex. 1, Apr. 9, 2024 Tr., Dkt. No. 47, at 34-56.

As explained in §II.D infra, a reasonable person would have known, among other things, that throughout the civil and criminal contempt proceedings the court treated Medoff respectfully. Indeed, Medoff did not in the District Court quote any statement by the court that he contended demonstrated an aversion or hostility to him. Rather, he only complained about the court's statements that it does not issue orders it does not intend to enforce.

In addition, Medoff complained of rulings the court made. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. Liteky, 510 U.S. 556. Such decisions "can only in the rarest circumstances evidence the required degree of favoritism or antagonism." Id. "Almost invariably, they are proper grounds for appeal not recusal." Id.

Nevertheless, Medoff argued as evidence that would be perceived as bias the fact that neither the SEC nor the United States Attorney moved for criminal contempt. However, as the Supreme Court wrote in Young, "[c]ourts cannot be at the mercy of another Branch in deciding

whether such proceedings should be initiated." 481 U.S. at 796. Therefore, contempt proceedings "proceed at the INITIATION of the court." Id. at 799. A motion for criminal contempt by the SEC was not required and, indeed, the SEC was not authorized to file one. The United States Attorney's Office was not involved in this case until the court charged Medoff with violating 18 U.S.C. §401(3) and it accepted the appointment the court had proposed earlier. As the cases cited by the court at the April 9, 2024 hearing, among others, illustrate, it is common, not "unique" as the United States's Attorney claimed, for district judges to initiate criminal contempt proceedings. See Ex. 1, Apr. 9, 2024 Tr. at 7-8. The fact that the court initiated the criminal contempt proceedings in the manner authorized by Federal Rule of Criminal Procedure 42 could not cause, or contribute to causing, a reasonable person to question the court's impartiality.

As fully explained at the April 9, 2024 hearing, Tr. at 34-56, and in §II.D infra, what was claimed as evidence of bias would be viewed by a reasonable person as evidence of the court's consistent effort to be fair. This included giving Medoff prompt notice that the motion for civil contempt might become a criminal proceeding, offering to appoint a CJA lawyer to represent him in the civil case, and advising Medoff of his Fifth Amendment right to remain silent.

The court also repeatedly granted Medoff's requests for more time to try to reach an agreement with the SEC to resolve the civil case and try to develop evidence that might persuade the court to find that criminal contempt proceedings were not necessary or appropriate. The court's repeated admonitions that doing so was without prejudice to its right to institute criminal contempt proceedings, and explanations of what they would involve, would be reasonably regarded as the court's effort to assure that Medoff and his attorneys would not be misled to his detriment. Informing Medoff that if criminal contempt proceedings were initiated there would be a hearing to determine whether he should be released pending trial would not, as he claimed, be reasonably viewed as "shocking." Dkt. No. 24 at 11. Rather, a reasonable person would know that such a hearing is required by the applicable law – Fed. R. Crim. P. 42(a)(3), 46, and 18 U.S.C. §§3142, 3144.

After giving Medoff notice and an opportunity to be heard, the court initiated criminal contempt proceedings in the manner prescribed by Federal Rule of Criminal Procedure 42. There was no objection, including to this court's decision to preside rather than burden a colleague with mastering the long history of this case.

In addition, the pace of the proceedings could not cause or contribute to causing a reasonable person to question the court's

impartiality. On February 12, 2024 the court scheduled trial to
start on April 1, 2024. By February 12, 2024 Medoff had twice
admitted that he had violated the injunction in the Final Judgment
and apologized for doing so. He was represented by counsel fully
familiar with the case. The court expected that Medoff would
probably plead guilty and argue that his co-operation with the SEC
in the civil case justified a lenient sentence. In any event, the
court initially provided what would have been sufficient time for
his counsel in the civil case to prepare for a trial which would
have had few issues. However, when successor CJA counsel was
appointed the court granted a series of requests that postponed the
trial date to May 20, 2024.

Finally, the court's references to not issuing orders it does
not intend to enforce, and to its rejection of the SEC's first
proposed settlement with Biochemics to illustrate this, would not
be reasonably regarded as evidence of bias against Medoff. Rather
those references would reasonably be viewed as expressions of the
court's determination in all cases, concerning all parties, to
assure that its orders are obeyed as the law requires.

A reasonable person would also know that at the conclusion of
the April 9, 2024 hearing, after the court characterized the motion
to recuse as a frivolous effort to get another judge or delay the

trial, Medoff's lawyer acknowledged that it was filed "maybe for righteous delay." Ex. 1, Apr. 9, 2024 Tr. at 62. A reasonable person would understand that the motion was an example of what the First Circuit characterized as the reality that "recusal motions are sometimes driven more by litigation strategy than ethical concerns." In re Cargill, 66 F.3d at 1262-63.

In these circumstances there is not a close question as to whether a reasonable person would believe that the court had "an aversion, hostility, or disposition of a kind that a fair-minded person could not set aside" Liteky, 510 U.S. at 555-78. Rather, any reasonable person would conclude that the court did not have such a disposition. Therefore, there is not a close question as to whether the March 2024 motion to recuse was properly denied.

In the instant motion for release pending appeal, Medoff's new counsel reiterates some arguments made in the District Court and makes other arguments for the first time. The court doubts the First Circuit will find it appropriate to consider Medoff's new arguments. Nevertheless, the court is addressing them.

Medoff now asserts for the first time that the court instituting criminal contempt proceedings pursuant to Federal Rule of Criminal Procedure 42 rather than referring the matter to the United States Attorney for possible presentment to a grand jury

would be reasonably regarded as evidence of bias. See Dkt. No. 187 at 10-12. Medoff cites several cases in which that approach was taken, none of which were in the District of Massachusetts or the First Circuit. See id.

The court's decision to institute criminal contempt proceeding pursuant to Federal Rule of Criminal Procedure 42 would not be reasonably regarded as evidence of bias. Again, the Supreme Court has written that "[c]ourts cannot be at the mercy of another Branch in deciding whether [criminal] contempt proceedings should be initiated." Young, 481 U.S. at 796. Therefore, criminal contempt "proceed[s] at the initiation of the court," not generally by indictment. Id. at 799. "In punishing contempt, the Judiciary is sanctioning conduct that violated specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings." Id. at 800. "[T]he fundamental purpose is to preserve respect for the judicial system itself." Id. As the First Circuit has explained, criminal contempt ... is used to punish disobedience with a judicial order, and this vindicates the authority of the court." Marquardo, 149 F.3d at 39.

As Medoff has implicitly recognized, the Supreme Court has held that an indictment is not required for criminal contempt. See United States v. Green, 356 U.S. 165, 187 (1958), overruled in part by

Bloom, 391 U.S. 194. The right to trial by jury, which the court provided for Medoff, is a valuable check against abuse of the contempt power. See Bloom, 391 U.S. at 207; 3A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Fed. Prac. and Proc. Crim. §709 at 344 (4th ed.). As Wright & Miller have observed, "requiring a grand jury indictment would be an unnecessary refinement, of little practical value, in an aspect of contempt procedure that so far has worked well." Id. This case illustrates the wisdom of that insight.

In his March 2024 motion to recuse, Medoff stated that he agrees that his contempt proceeding "does not involve disrespect or criticism of the District Judge pursuant to Fed. R. Crim. P., 42(a)(3)." Dkt. No. 24 at 15. Therefore, a reasonable person would understand it was permissible for this court to preside in this case and, indeed, might view it as a dereliction of duty if this court imposed that burden on a colleague unnecessarily.

Medoff did not renew his motion to recuse after the court rejected the two proposed Rule 11(c)(1)(C) binding plea agreements. Nevertheless, Medoff also now argues for the first time that the fact that the court rejected those two plea agreements would be reasonably regarded as evidence of bias. However, "Rule 11(c)(1)(C) permits the defendant and the prosecution to agree on a specific sentence, but that agreement does not discharge the court's

independent obligation to exercise its discretion." <u>Freeman v. United States</u>, 564 U.S. 522, 529 (2011), <u>holding modified by</u> <u>Hughes</u>, 584 U.S. 675 (2018). As the court explained in its April 12, 2024 Order, <u>Hughes</u>, 584 U.S. at 682, requires that a court not accept a binding plea agreement unless it is satisfied that the agreed sentence is within the applicable Guidelines range or outside of it for justifiable reasons. <u>See also</u> U.S.S.G. §6B1.2(c)(1),(2). The first proposed binding plea agreement would have required a sentence of 0-3 months. The court correctly found that the Guidelines range was at least 4-10 months and the parties provided no justification for a sentence below that range. The court rejected the second proposed binding plea agreement that would have required a 4 to 10 month sentence in part because the high end of Medoff's Guidelines range would have been 14 months if he were denied a reduction for acceptance of responsibility, and because an upward variance or departure might have been justified because Medoff's Criminal History category of II could have been found – and was reasonably found - to substantially underrepresent the risk of recidivism. <u>See</u> U.S.S.G. §4A1.3.

A reasonable person would believe the court was truthful when it said it was open-minded about what sentence would be sufficient and no more than necessary if Medoff was convicted or pled guilty

without a binding plea agreement, and would understand that the court was reasonably unwilling to risk delaying the scheduled trial by accepting a plea pursuant to a binding plea agreement that might be rejected at a sentencing hearing when the court would be more fully informed.

Medoff also reiterates several arguments relating to the reasonableness of his sentence as establishing the required close question concerning recusal. However, as explained earlier, there is not a close question as to whether his sentence was procedurally or substantively unreasonable.

Medoff also cites as evidence of bias the fact that "[w]hen the SEC requested a $17 million order of disgorgement in the civil case, the court stated that was 'inadequate' and issued an order proposing further measures against Mr. Medoff." Dkt. No. 187 at 12 (referencing Nov. 27, 2024 Mem. & Order, Case No. 12-CV-12324, Dkt. No 812). In the November 27, 2024 Memorandum and Order, the court allowed the SEC's motion for disgorgement. Case No. 12-CV-12324, Dkt. No 812 at 17. However, it expressed its tentative view that the SEC's proposed order requiring disgorgement would not alone be sufficient because Medoff had repeatedly failed to make court ordered payments. Id. at 14. In addition, the SEC's proposed order did not include any schedule for payment. Id. at 12.

Therefore, the court gave the parties notice and an opportunity to be heard concerning its inclination to order that Medoff make the required payment within 90 days of the commencement of Supervised Release. Id. at 14. It also informed Medoff that if he did not make any or all of the required payment he would have the burden of producing evidence showing he is unable to comply. Id. at 14-15 (quoting Rylander, 460 U.S. at 755). In addition, the court proposed again ordering Medoff not to engage in the offer or sale of securities for 10 years. Id.

The SEC now "fully supports" including these two additional proposed provisions in the order of disgorgement to be issued. Case No. 12-CV-12324, Dkt. No. 814 at 3, 4. Medoff does not. See Case No. 12-CV-12324, Dkt. No. 815. Any reasonable person would view the court's proposed provisions for the order of disgorgement as another effort to assure that its orders are enforced rather than as evidence of bias as Medoff contends.

Medoff's ultimate, unmeritorious argument is that his right to due process has been violated because, even though the contempt did not involve disrespect of the judge, the court became so embroiled in the controversy that a reasonable person would question its impartiality. See Dkt. 187 at 9-10, citing Taylor v. Hayes, 418 U.S. 488, 501-02 (1974), and In re Jafree, 741 F.2d 133, 137 (7th Cir.

1984). However, neither Taylor, Jafree, nor other cases that Medoff cites, are comparable to the instant case.

Taylor involved a trial during which the court said it was holding defendant's counsel in contempt but did not sentence him immediately. See 418 U.S. at 495. At the conclusion of the trial, the court refused the defendant's request to be heard before sentencing him on nine charges of contempt to a total of four and a half years in prison and barring him from practicing law in a division of his court. Id. at 490-91. The Supreme Court found that the judge did not have the authority to disbar the defendant. Id. at 495. More significantly, the Court held that the defendant had not been given the "reasonable notice of [the] charge and an opportunity to be heard in defense before punishment [was] imposed" that due process required. Id. at 499-500. Therefore, the Court vacated the conviction and held that if the defendant was tried for contempt again another judge would have to preside because the trial judge's impartiality might reasonably be questioned. Id. at 500-01.

In In re Jafree, the defendant was also an attorney. See 741 F. 2d at 134. The Executive Committee of United States District Court ordered that the defendant show cause why he should not be held in contempt for, among other things, repeatedly making "scurrilous allegations concerning the judges of the district

court." Id. at 135. The Executive Committee found the defendant in contempt, imposed a five-month suspended sentence, and disbarred him. Id. The Seventh Circuit reversed, holding that because the proceeding "was principally a contempt trial and not an attorney disciplinary proceeding, compliance with Rule 42 was required." Id. The Seventh Circuit also found that several of the judges who were targets of the defendant's scurrilous allegations improperly failed to recuse themselves. Id. at 136, 137.

In contrast, it is undisputed that Medoff did not criticize the court or act disrespectfully to it until after sentence was imposed on August 7, 2024 when he shouted that the court was "ridiculous" and stated "you [the court] think you are smarter than [everyone else]." Ex. 2, Aug. 7, 2024 Tr. at 72-73.[16] It is also undisputed that the court gave Medoff ample notice of the potential criminal contempt charge, see, e.g., Feb. 7, 2024 Order, Case No. 12-CV-12324, Dkt. No 782; an opportunity on Feb. 9, 2024, to be heard before it instituted the criminal contempt charge; and complied with the requirements of Rule 42 in every other way.

---

[16] The First Circuit has held "'[a] party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against [her].'" F.D.I.C. v. Sweeney, 136 F.3d 216, 219-20 (1st Cir. 1998) (quoting 13A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure §3542 at 577-78).

In essence, the matters on which Medoff relies concern judicial decisions evidencing the court's effort to determine fairly whether Medoff was guilty of criminal contempt and, if so, what sentence was sufficient and no more than necessary to punish him for that crime, to deter him from violating the law again in the future, and to vindicate the authority of the court. Any reasonable person would understand that this is what judges are authorized and expected to do. See, e.g., Marquardo, 149 F. 3d at 39, 40.

Therefore, there is not a close question as to whether the court should have granted Medoff's motion to recuse or been disqualified. See Liteky, 510 U.S. at 556.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that Medoff's Motion for Release Pending Appeal with Incorporated Memorandum of Law (Dkt. No. 187) is DENIED.

UNITED STATES DISTRICT JUDGE